SPRINGFIELD    SOUTHWESTERN    RAILWAY COMPANY, Appellant, v. JACOB SCHWEITZER and NEW PHOENIX FOUNDRY & MACHINE COMPANY.

Division One, November 30, 1912.

1. JURISDICTION: Raised by Court. Jurisdiction of the subject-matter can neither be waived nor conferred by consent of counsel; a court, *ex mero motu*, may raise the question of jurisdiction. Whether or not jurisdiction of the subject-matter exists in a concrete case is a question that springs spontaneously for inquiry at any step or stage of the suit, and may be raised at any time by the court itself.

2. APPELLATE JURISDICTION: Condemnation Case: Title to Real Estate: Leasehold. The Supreme Court has jurisdiction of an appeal from a judgment in a condemnation case where

title to real estate is involved, but it does not have jurisdiction where the whole controversy is between a railroad company and the lessee as to the value of a lease for a term of years on the land taken, and the amount involved is less than $7500.

3. ———: ———: **Leasehold.** A leasehold for a term of years is not real estate. At common law it was a chattel, and the statutes have not changed it from personal property into real estate for the general purposes of the law. [Following Orchard v. Store Co., 225 Mo. 414.] And a suit by a railroad company to condemn land, in which the entire controversy finally resolves itself into a contention between the company and a lessee of the land taken, as to the value of the lease for a term of years and the damages resulting to the lessee from breaking up an existing business thereon, does not so involve title to real estate as to give the Supreme Court jurisdiction of the appeal.

Appeal from Polk Circuit Court.—*Hon. Argus Cox,* Judge.

TRANSFERRED TO SPRINGFIELD COURT OF APPEALS.

*Robert T. Railey* and *Barbour & McDavid* for appellant.

*John Schmook* and *T. J. Murray* for respondent.

LAMM, J.—Defendant Schweitzer was the sometime owner of four parcels of real estate in the city of Springfield—for convenience numbered tracts 1, 2, 3, and 4, severally. Tract 3 alone concerns us. Defendant machine company was in possession of tract 3 as a tenant of Schweitzer. In the exercise of its delegated right of exercising the power of eminent domain, plaintiff railway company brought a condemnation proceeding in the Greene Circuit Court against Schweitzer, as owner, to condemn all four tracts for railway purposes, and made machine company a party defendant. Such steps were ultimately taken in that case that, from a judgment in favor of machine company, plaintiff railway company appeals.

Schweitzer does not appeal from the final judgment, nor does machine company appeal therefrom,

nor does railway company appeal from that part of the judgment relating to Schweitzer. The controversy, therefore, narrows itself on appeal to one between railway company and machine company.

On December 31, 1904, Schweitzer let tract 3 to machine company for a one-year term. This lease was in writing, duly recorded, and gave an option to lessee for an extended term of three years to begin at the end of that reserved. On the day before the term ended, machine company exercised its option to extend the term for the three additional years. A writing to that effect was signed up and put of record. There was testimony to the effect (and the court so found) that railway company had notified all the parties concerned, on the day this new lease was signed, that it proposed taking all four tracts by condemnation proceedings. There was testimony from which the fact might be inferred that the extending of the lease was taking time by the forelock by putting machine company on a better footing to claim damages, but none of that testimony seems material to the question we have in mind.

Machine company was put in possession under its original lease and was running a foundry and machine shop in some ramshackle buildings on tract 3. This possession was continued into the new term and, while so in possession, on January 22, 1906, plaintiff sued to condemn all four tracts. The petition is of no consequence on the question we have in mind. It appears machine company lays no claim to any other tract except number 3; and as to that its only claim was as tenant for the unexpired part of the additional three-year term. Both defendants, on service of process, filed separate answers. Schweitzer admitted he owned all four tracts in fee simple and went on to point out that his codefendant machine company was in possession of tract 3 (describing it) as his tenant for a term of three years beginning January

1, 1906. The case rode off below on that theory. To
that end machine company filed its answer setting up
its possession of tract 3 under the same lease and,
among other things, claiming damages in the sum of
$5000 on the theory that "the breaking up, interfer-
ence with and interruption of the business" it was
conducting on the leased premises, including the in-
jury to its business and loss of profits, amounted to
that sum. On the day these answers were filed, the
court made the conventional finding of facts, spread-
ing of record conditions precedent to the right to con-
demn property for railway purposes, etc., and then
went on to appoint and instruct three commissioners
to assess damages. Presently they reported, assess-
ing damages to the four tracts separately. When they
came to tract 3, they reported an award of compensa-
tion in the sum of $4200 (quoting) "to Jacob C.
Schweitzer, the owner of said tract, and the New Phoe-
nix Foundry and Machine Company, lessee thereof,
as set forth in said petition, and as their interests may
appear. . . ." Presently, on notice given of this
award and report, Schweitzer and machine company
excepted thereto, severally, through separate counsel.
Following these exceptions, Schweitzer took down the
whole award of $18,200. Subsequently, on machine
company's motion, the court ordered him to return
to the clerk the $4200 allowed as compensation and
damages for tract 3. It appears he obeyed this order,
in part, by returning $2000. Taken by a change of
venue to the Polk Circuit Court, the cause was reached
for trial in 1909. At that time, on the motion of rail-
way company, machine company was ordered to make
its claim for damages more specific. This it did in
the form of written amendments to its exceptions to
the commissioners' report. Thereby it claimed dam-
ages, summarized as follows: For removing its busi-
ness, foundry and machine shops, comprising sand,
iron, patterns, machinery, tools, stock and material,

engines and implements, etc., $634.31; damages con-
sequent to said removal in breakage and destruction
of articles and machinery so moved, $850; in breaking
up, interference with and injury to its business, loss
of patronage and custom by change of location, $1000;
loss of earnings during the time of removal, $1000; de-
privation of the use and benefits of its leasehold in-
terest during the unexpired term of its lease, $900;
loss of its established trade, patronage and good-
will at its old stand, $500.

On the filing of these amended exceptions by ma-
chine company, Schweitzer formally withdrew his own
exceptions by a pleading filed and thereby he infer-
entially submitted to judgment in favor of plaintiff
and directly asked the court to determine the respec-
tive interests of himself and machine company in the
award on tract 3, and to make an order distributing
the same in accordance therewith. Thereupon the
cause came on for trial on said motion of Schweitzer
and the remaining live exceptions of machine com-
pany.

The trial was to the court without the aid of a jury
and exceptions were taken by appellant to the refusal
to strike out the exceptions, to the introduction of
certain testimony by machine company, to the scope
of the inquiry, to the giving and refusing of instruc-
tions, and to the findings and judgment, but none of
them are material until such time as the question in
mind is at rest.

Attending to the findings and judgment anent
tract 3, among other things the court found that the
lease was of no more value than the monthly rent re-
served. Further that machine company, to continue
its business during the unexpired term of its lease and
preserve its machinery and material from loss and
destruction, was obliged to remove said machinery and
material to another building, thereby necessarily in-
curring expense in the sum of $634.31, and suffered

loss of fire brick to the amount of eighty-six dollars "and that" (quoting) "by reason of the fact that said lessee had its machinery so installed and in operation as aforesaid the leasehold was of special value to defendant company in excess of the ordinary rental value of the premises to the amount of $720.31." Further that Schweitzer had withdrawn his exceptions to the report of the commissioners, etc. It was adjudged, *inter alia*, that he take nothing, that machine company take nothing from Schweitzer "or" (quoting) "from the value of the land independent of the special value of the leasehold," that Schweitzer take down the $2000 theretofore deposited with the clerk, and that machine company recover said $720.31 from plaintiff.

In the foregoing we have culled from the record the facts deemed necessary to an intelligent and self-explanatory disposition of a question we have in mind, namely, our jurisdiction. We think jurisdiction is challenged on the face of this record. In that view of it, the situation seeks its determination at the outset. Thereon we make these observations:

(a) The question of jurisdiction is not sprung by counsel. One of the ancient prerogatives of counsel is, within the boundaries of the record, to make or not make points for the decision of judges. They are at liberty (within the confines of good sense) to have play of free will and do as they choose in that regard. On the other hand, some of the ancient prerogatives of the courts of all enlightened peoples are to decide only such points sprung by counsel as are deemed vital and necessary, and, in turn, a court may, *ex mero motu,* spring points of its own—at least on the subject of jurisdiction; for jurisdiction of the subject-matter can neither be waived nor conferred by consent of parties. Whether it exists or not in a concrete case springs spontaneously for inquiry at any step or stage of a suit at any time in any case and

will be considered *sua sponte*. [City of Tarkio v. Clark, 186 Mo. l. c. 294.]

(b) We are of opinion we have no jurisdiction of this appeal. This, because:

(1) The Constitution gives the Supreme Court appellate jurisdiction in cases involving title to real estate. By construction we have arrived at the conclusion, announced many times, that it is not sufficient to confer jurisdiction on this court, that the title to real estate should be a subject of inquiry collaterally or by way of an incident in the suit. To confer jurisdiction, in a constitutional sense, the *judgment* appealed from must involve title to real estate and such title must be directly affected thereby. [Jones v. Hogan, 211 Mo. l. c. 47, and cases cited; Turner v. Morris, 222 Mo. 21; Loewenstein v. Insurance Co., 227 Mo. l. c. 134, *et seq.*; Kennedy v. Duncan, 224 Mo. l. c. 664; Porter v. Railroad, 175 Mo. 96.]

(2) Under the constitutional grant of power to hear and determine appeals in cases involving title to real estate, we have held that this court has jurisdiction in appeals from judgments in condemnation proceedings under the exercise of the right of eminent domain. The leading case on that head is State ex rel. v. Rombauer, 124 Mo. 598. In Railroad v. Wyatt, 223 Mo. l. c. 351-2, a line of cases are cited following the Rombauer case. And that general doctrine may be accepted as settled.

(3) It would be loose and illogical construction, however, to hold we had jurisdiction in such cases unless our jurisdiction be referable to the constitutional grant of power to hear causes involving title to real estate. It follows that when a judgment in a condemnation proceeding comes by appeal to the Supreme Court and is of such sort that the amount involved does not confer jurisdiction and the title to real estate is not involved, our jurisdiction fails. The question up for determination, therefore, is not merely whether

this is a condemnation suit.   It goes deeper and is: Is the title to real estate involved as between railway company and machine company?

(4)   Machine company had a leasehold for that part of a term of three years that was unexpired when railway company appropriated the premises, and no more.   The question, then, can be put in a neater and more speaking form by stating it this way:   Is a leasehold for a term of years *real estate?*   If so, the title to real estate is involved, for unquestionably the term or leasehold of machine company was sequestrated.   If not, the title to real estate is not involved in a constitutional sense.

Attending to the question thus put, it must be conceded that if a term for years is real estate, it becomes such either by force of common law or by virtue of some statute.   Now, at common law a term for years created by a lease was a chattel—a chattel real to be sure, but still a chattel.   At the tenant's death such leasehold became an asset in the hands of his administrator and did not go to his heirs.   At common law the term "real estate" did not include a lease. [Lenow v. Fones, 48 Ark. 557; Brover v. Fox, 36 Mich. 1. c. 459; Despard v. Churchill, 53 N. Y. 1. c. 199; Buhl v. Kenyon, 11 Mich. 249; 2 Kent's Com. (14 Ed.), *342; Gunn v. Sinclair, 52 Mo. 327; Orchard v. Store Co., 225 Mo. 1. c. 433, *et seq.*]

Turning now to our statutes, we have a group of them defining the term "real estate" in connection with some particular subject-matter and for some particular purpose as, for example:   Judgments (R. S. 1909, Sec. 2161); Executions (*Ibid.*, Secs. 2193-2194); Conveyances (*Ibid.*, Sec. 2822); Crimes and Punishments (*Ibid.*, Sec. 4928); Dower (*Ibid.*, Sec. 345); Construction of Statutes (*Ibid.*, Sec. 8057), and Taxation and Revenue (*Ibid.*, Sec. 11519).

A reproduction here of those statutes with an analysis and interpretation thereof would be waste of time and mere idle and ostentatious show of labor subserving no- useful purpose. It is enough to say that in Orchard v. Store Co., 225 Mo. 414, supra, ruled in Division Two, they are exhaustively reviewed, expounded and applied. The learning of that case is of the order that leaves no stone unturned, no source of information unexplored, no pains omitted. It must be held, then, that further exposition of those statutes in that regard is set at rest and should not be put on foot and on its legs as a going concern again. We stand by that case. It was there held, as the sum of the matter, that the foregoing statutes have not changed a chattel real from personal property into real estate for the general purposes of the law. In given particulars and for certain defined purposes as, for instance, in the chapter on Conveyances, the term "real estate" is made to include a chattel real, but not for the general purposes of the administration of the law. Following the reasoning of the Orchard case and on its authority, we hold that chattels real are left for the purposes of this case, as at common law, to-wit, as personal property. Indeed, even a super-ficial reading of the exceptions of machine company, of the finding of the court and of the judgment below, points to the fact that the damages machine company suffered, if any, related to personal property. The title to real estate not being involved in that part of the omnibus judgment appealed from, we have no jurisdiction.

The cause must be transferred to the Springfield Court of Appeals. Let it be so ordered. All concur.