THE STATE ex rel. E. P. KELLY et al. v. FRANCIS H. TRIMBLE et al., Judges of Kansas City Court of Appeals.

In Banc, February 19, 1923.

1. **UNLAWFUL DETAINER: Complete Code.** The forcible-entry-and-unlawful-detainer act is a complete code within itself, and pro-

State ex rel. Kelly v. Trimble.

visions of the general statutes cannot be invoked to assist in either its construction or enforcement.

2. ———: ———: Institution of Suit: Service. The manner of instituting actions for forcible entry or unlawful detainer and the service of process upon the defendants therein are entirely different from the manner of instituting suits and serving process in civil actions under the general justice-of-the-peace act.

3. JURISDICTION: Justice Court: Parties and Subject-Matter. Courts of justices of the peace, being local courts of limited jurisdiction and inferior courts not proceeding according to the course of the common law, are confined strictly to the statutory authority given them, and their records must show the existence of all facts necessary to give them jurisdiction both of the subject-matter and of the parties to the action. Jurisdiction of the parties is acquired when they are personally served with process within the territorial limits of the court, and in order to acquire jurisdiction of the subject-matter in proceedings *in rem* there must be actual seizure and possession of the *res* by the officer of the court, or some act of equivalent import.

4. UNLAWFUL DETAINER: Jurisdiction: Service of Process: Reading or Delivery of Both Summons and Complaint. After a complaint in forcible entry or unlawful detainer is filed before a justice of the peace and summons is issued, in order to confer upon the court jurisdiction over the person of defendant and the subject-matter of the action, the constable, by the express requirement of the statute (Sec. 3000, R. S. 1919), must either read the complaint and summons to the defendant or deliver to him a copy of the complaint and summons. The service of the summons gives the court jurisdiction of defendant's person, and the service of the complaint gives the court jurisdiction over the *res* or subject-matter, and unless the complaint is either read or a copy of it delivered to the defendant the court acquires no jurisdiction of the subject-matter.

5. ———: ———: Appearance: No Reading or Delivery of Complaint. The appearance of a defendant in a case of forcible entry or unlawful detainer gives the court jurisdiction of his person, but not jurisdiction of the subject-matter of the action. The statute expressly requires that the summons shall be excuted either "by reading the complaint and summons to the defendant" or "by delivering him a copy of the complaint and summons," and it is only the complaint that gives jurisdiction of the subject-matter, and unless it is either read or delivered by the constable to the defendant the court does not acquire jurisdiction over the subject-matter, notwithstanding the defendant enters his appearance.

State ex rel. Kelly v. Trimble.

[Per WOODSON, C. J., with whom HIGBEE and ELDER, JJ., concur; DAVID E. BLAIR, J., dissents; JAMES T. BLAIR, J., dissents in a separate opinion; WALKER and GRAVES, JJ., do not concur in either opinion, but concur in the result of the opinion of WOODSON, C. J., quashing the judgment of the Court of Appeals.]

*Held*, by JAMES T. BLAIR, J., dissenting, that the appearance of a defendant in any case confers jurisdiction over the subject-matter, if the court otherwise has jurisdiction of the subject-matter, and any holding to the contrary is out of harmony with correct conceptions of the functions of service; that service is a means of bringing one into court against his will; it is the means of doing something for which there is no need if the party comes in voluntarily; it is notice of the suit; that the said statute does not declare that one may not voluntarily take notice and appear and go on with the defense to a case of unlawful detainer, and the court ought not therefore to declare that appearance does not confer jurisdiction of the subject-matter.

6. ———: **When Raised.** The question of jurisdiction may be raised at any stage of the proceedings, even by motion after judgment, or for the first time in the Supreme Court.

7. ———: **Waiver.** The question of jurisdiction over the subject-matter cannot be waived by entry of appearance or by express stipulation.

8. ———: **Derivative.** If the court of the justice of the peace in an action of unlawful detainer had no jurisdiction of the subject-matter, neither did the circuit court upon *certiorari*, nor did the Court of Appeals on appeal; and since the complaint filed with the justice was read or a copy delivered to only three of the seven defendants, the justice did not acquire jurisdiction of the subject-matter; and since upon the application of one of them served and one not served, made before the other four were served, the case was transferred by *certiorari* to the circuit court, said circuit court was likewise without jurisdiction; and likewise the Court of Appeals was without jurisdiction to entertain an appeal from the judgment of the circuit court; and upon *certiorari* at the relation of all seven defendants, the Supreme Court, in the exercise of its constitutional superintending control over all other courts, quashes the decision of the Court of Appeals therein. [Per WOODSON, C. J., WALKER, GRAVES, HIGBEE and ELDER, JJ., concurring, GRAVES and WALKER, JJ., in the result; JAMES T. BLAIR and DAVID E. BLAIR, JJ., dissenting.]

*Held*, by JAMES T. BLAIR, J., dissenting, that the decision of the Court of Appeals is quashed on the sole ground that in an

action of unlawful detainer a justice of the peace can acquire no jurisdiction of the subject-matter unless there is service upon the defendants, either personal or by publication; that the defendant cannot appear in such an action and give the court jurisdiction to proceed; and that said ruling is based on the further holding that service upon all defendants in unlawful detainer is necessary to give any of them the right to sue out a writ of *certiorari* to remove the cause to the circuit court, since three of the seven defendants were served by "reading the complaint and summons" to them, and one of those served and one not served alone made application for a transfer of the case to the circuit court. No case decided by the Supreme Court so holds, nor did the Court of Appeals make any ruling to the contrary. On the other hand, it has been ruled by the Supreme Court that a court of appeals has final jurisdiction on the question of its own jurisdiction arising out of the record before it. The decision of the Court of Appeals, therefore, cannot be quashed, either on the ground that its decision contravenes any previous decision of the Supreme Court, or on the ground that the Constitution gives the Supreme Court general superintending control over all inferior courts.

## Certiorari.

PEREMPTORY RULE MADE ABSOLUTE.

*Frank M. Lowe* for relators.

(1) The opinion of respondents is in direct conflict with the opinion of this court. Gary Realty Co. v. Kelly, 224 S. W. 410. (2) The opinion in holding that the justice of the peace had the right to proceed with the case after the writ of *certiorari* had been issued and served upon him, is in direct conflict with decisions of this court. State ex rel. v. Board of Trustees, 186 S. W. 680. (3) The opinion in holding that the order of publication issued before return day of summons was a mere irregularity is in conflict with many decisions of this court. Kunzie v. Hickman, 243 Mo. 103, 118; Williams v. Sands, 251 Mo. 132; Stanton v. Thompson, 234 Mo. 14; Priest v. Capitian, 236 Mo. 446; Lumber Co. v. McCabe, 220 Mo. 154; Lumber Co. v. Keener, 217 Mo. 530; Davis v. Montgomery, 205 Mo. 204; Hinkle v. Lovelace, 204 Mo. Mo. 219; Ramsey v. Huck, 267 Mo. 333. (4) The opin-

ion in holding that the entry of appearance in the circuit court in an unlawful detainer suit sought to be removed by *certiorari,* gives the circuit court jurisdiction, regardless of failure of service of summons or publication upon the defendants in the justice court, before the filing of the application for *certiorari,* is in direct conflict with many decisions of this court, some of which are: Robinson v. Walker, 45 Mo. 117; Field v. Maloney, 78 Mo. 172; State ex rel. v. Nixon, 232 Mo. 496, 507; Sidwell v. Jett, 213 Mo. 601; St. Louis v. Gunning Co., 138 Mo. 355.

*Cooper, Neel & Wright* for respondents.

(1) The writ of *certiorari* cannot be made to perform the functions of an appeal on the merits, and the Supreme Court will not quash a non-conflicting court of appeals decision even if it is "erroneous or placing a wrong construction upon a statute or other law." State ex rel. Mann v. Trimble, 232 S. W. 100; State ex rel. Southern National Bank v. Ellison, 266 Mo. 423; State ex rel. Railway Co. v. Ellison, 263 Mo. 509, 514; State ex rel. Summerson v. Goodrich, 257 Mo. 40. The mere misapplication by a court of appeals of a Supreme Court ruling does not authorize the latter court to review, but there must be a refusal to follow the last controlling Supreme Court decision. State ex rel. Commonwealth Trust Co. v. Reynolds, 213 S. W. 804. The opinion does not in any respect conflict with the rulings or principles of the decisions cited by relator. They are not even analogous. And any conflict must be both very plain and direct. State ex rel. United Railways Co. v. Reynolds, 257 Mo. 19. (2) Relying upon the established rule that a writ of *certiorari* or prohibition operates to stay proceedings in the trial court, relators say that the opinion complained of holds that the justice of the peace had the right to proceed with the case after the writ of *certiorari* had been served upon him. On the contrary, the opinion holds the justice could not so proceed.

(3)   The opinion is not in conflict with cited decisions including those holding void an order of publication based upon a premature *non est* return.   Relator's claim is that the opinion is wrong in holding that the order of publication and the publication itself were at most irregularities, being non-jurisdictional in this case; that jurisdiction over the subject-matter of the action was obtained before the *certiorari* removal by service upon defendants in actual possession, against whom unlawful detainer properly lay; that, accordingly, no further proceedings before the justice were necessary to obtain jurisdiction over the summoned defendants; and that since the non-summoned defendants afterwards appeared voluntarily in the circuit court thus conferring jurisdiction over their persons, the defective publication against them was non-jurisdictional and therefore at most a mere irregularity.   Such holding was a correct construction of the pertinent sections of our unlawful-detainer statute which have never been specifically and directly construed by this court.   The nearest analogous decisions of this court support the holding of the opinion. No question is made by relators with reference to the virtue of the constable's return to prove service upon the defendants who were duly summoned on November 2nd, prior to the *certiorari* removal.   Of course it is the fact of such service, made timely, that is material, not the date or character of the return.   But the latter are not and could not be attacked.   It is an officer's duty, to make immediate, speedy service;  and, as to defendants actually served, the officer may lawfully make his return of service before the return day of the summons.   32 Cyc. 497;  18 Ency. Pleading & Practice, 946;  Miller v. Forbes, 6 Kan. App. 610.   (4)   There was no conflict by reason of the holding in the opinion that the cause was removed by *certiorari* and jurisdiction over parties made complete by the appearance of non-summoned defendants in the circuit court.   (a)   The statutes make the only prerequisites to be "the service of summons or mak-

ing publication'' and that the application shall be made ''before the day of trial.'' The Legislature did not say that all defendants must be served to make a removal taken by part of them effective; and the object of these, like all of the provisions of the code, being to avoid delay and to provide a speedy summary remedy, the only limitation as to time is that the application be filed before trial in the justice court. Secs. 3031, 3032, R. S. 1919. Unlawful detainer can be maintained against any defendant in possession; anyone who participates in an unlawful detainer is subject to be sued. Blumenthal v. Waugh, 33 Mo. 181; Kingman v. Abington, 56 Mo. 46; Bernecker v. Miller, 40 Mo. 473; McHose v. Fire Ins. Co., 4 Mo. App. 514; Lewis v. Oesterriecher, 47 Mo. App. 82. (b) Jurisdiction over the subject-matter of action was the only prerequisite to validity of *certiorari* removal. Jurisdiction over the subject-matter of an action, consists of two elements, first, the inherent power or authority in the particular court to hear and determine that general class of suits, and, second, the vesting of such authority over a particular action of such general class by means of the filing of the action and the bringing of any one proper defendant into that court in some lawful manner—whether by service of process, publication or voluntary appearance is immaterial. Fields v. Maloney, 78 Mo. 172. All the essentials of jurisdiction in the justice of the peace over the subject-matter are clearly present in this case. State ex rel. v. Nixon, 232 Mo. 496; Robinson v. Walker, 45 Mo. 120. (c) Construction of unlawful detainer statutes made by the opinion follows the decisions of this and the other appellate courts. Sholar v. Smyth, 3 Mo. 417; Hamilton v. Jeffries, 15 Mo. 617. (5) Where only part of the defendants have been served, the judgment is valid and enforcible against those who were served even though a nullity as to those not served. No judgment is treated as an entirety, but rather as enforcible severally against the defendants properly in court, regardless of any de-

ficiency as to other defendants.  Skillman v. Clardy, 256 Mo. 320;  State ex rel. Ozark Co. v. Tate, 109 Mo. 268-70;  Stevenson v. Black, 168 Mo. 559;  Boyd v. Ellis, 107 Mo. 399;  Keaton v. Jorndt, 220 Mo. 133;  Williams v. Hudson, 93 Mo. 524.

WOODSON, C. J.—This is a proceeding by *certiorari* instituted in this court by the relators against the respondents, to quash their opinion, as Judges of the Kansas City Court of Appeals, wherein the relators were appellants, and Gary Realty Company were respondents.

This case has had a long and tortuous course, through the justice court, the circuit court, the Kansas City Court of Appeals, and this court, some of the courts two or three times, all of which, in so far as this case is concerned, are unnecessary to notice, except as will be presently mentioned.

The facts out of which this case arose were involved in an unlawful detainer suit brought by the Gary Realty Company against E. P. Kelly and others, the relators here, and said facts in so far as are here material, are as follows:

The Gary Realty Company made a lease of twenty feet of ground at the northwest corner of Twelfth and McGee Streets, in Kansas City, Missouri, known as the lobby of the Empress Theatre.  The lease was made to the Empress Theatre Company, a New Jersey corporation, which operated that theatre.  The lease contained the following provision:

"In case lessee becomes insolvent or goes into bankruptcy, voluntary or involuntary, or into receiver's hands, then this lease shall become void, and the remaining portion of the term shall revert to the lessor."

On July 7, 1915, upon application of two stockholders, a receiver was appointed for the Empress Theatre Company by the Hon. Clarence A. Burney, one of the circuit judges of Jackson County.

Upon the appointment of the receiver of the prop-

erty, the Gary Realty Company gave notice to the receiver of the forfeiture of the lease because of his appointment as such, and refused to receive any rents under the lease for the property thereafter. The receiver sold the property, and on October 23, 1915, filed his report of the sales, which was approved by the court on October 27, 1915.

On October 30, 1915, the Gary Realty Company demanded immediate possession of the premises of the purchasers at the receiver's sale, and contended that the receiver had no right, title or interest whatsoever in or to said premises, and therefore he could not and did not sell or convey any right, title or interest to the same; that the Realty Company was entitled to the possession of the property, and exhibited to the said appellants the original lease of said premises, and notified them that if they did not deliver immediate possession to the respondent it would institute proceedings to enforce its rights and to recover damages for unlawfully withholding the possession of the premises.

On November 1, 1915, Kelly tendered the Gary Realty Company the rent for the month of November, as provided for by the Gary lease, which was refused by it. On November 1, 1915, the Gary Realty Company sued for the possession of said property and $2000 damages, and named, as the defendants in possession of the same, E. P. Kelly, Paul LeMarquand, A. LeMarquand, W. Le-Doux, F. G. Bonfils, H. H. Tammen and the Empress Theatre Company.

This complaint, filed with the justice, was in conventional form, and summons was issued for them accordingly and made returnable November 9, 1915.

On November 2, 1915, the constable returned the summons, saying that he had made diligent search for and had failed to find the defendants E. P. Kelly, O. Le-Doux, F. G. Bonfils and Empress Theatre Company within Kaw Township.

On November 3, 1915, A. LeMarquand and W. Le-Doux made application for *certiorari* for themselves

alone.   A. LeMarquand had been served with summons by the constable, and made an affidavit as required by statute in order to procure a writ of .*certiorari* for the purpose of removing the cause to the circuit court.   Upon the filing of this application for *certiorari*, bond for the sum of $10,000 was given as required by statute.   This bond was only given to pay the judgment against Ledoux and LeMarquand, and not for or on account of or in behalf of their co-defendants.

On November 4, 1915, the writ of *certiorari* was served on the justice, and on the same day upon the *non est* return of the constable an order of publication was made (which is not here material in the view we have taken of the case).

The record in the case was finally certified to the circuit court according to the mandate of the writ of *certiorari*.

There was much time and space devoted to this return, service of process and the proceedings thereafter had in the case in the justice court and the jurisdiction of the circuit court, also that of the Court of Appeals and of the Supreme Court in consequence of those proceedings; but in the view of the case as we look at it, it will be unnecessary to spend any more time upon this branch of the case, as there are other questions presented by the record which effectively dispose of the case.

The judgment of the circuit court was for the plaintiff:  that the property had been unlawfully detained by the defendants; that it have restitution of the premises; that it recover $4000 damages, and found the monthly rents and profits to be $650, and that the complainant have and recover from the defendants $1300, double the said sum found to be the monthly rents and profits, and ordered execution to issue therefor.

From the above judgment defendants Kelly, LeMarquand and LeDoux appealed to this court.

The cause was heard before Division No. 2, and

Judge FARIS for the court wrote the opinion. He held that the appointment of the receiver destroyed the life of the remainder of the lease, and that from and after July 7, 1915, the date of the appointment of the receiver, there was no lease, and that the attempted sale made by Judge Burney was void and of no effect, and as a result E. P. Kelly obtained no right, title or interest in or to the lease. This same conclusion was reached in the opinion about which relators are here complaining, and also by Commissioner REEVES in the opinion written in Division No. 2. So that the one definite, positive conclusion written as the law of this case, is that from and after July 7, 1915, the day of the appointment by Judge Burney of a receiver for the Empress Theatre Company, the lease upon which the unlawful detainer suit was instituted and out of which all of the litigation in this matter has come, has had no life or vitality, but was terminated and finished on July 7, 1915.

Because of the fact that the movents and relators, F. G. Bonfils and H. H. Tammen, claimed title through E. P. Kelly, respondents in their opinion have stated that Bonfils and Tammen acquired no title and had no right or interest in the property, and therefore no standing in court, and they have so held regardless of the fact that Bonfils and Tammen through their lessees were in possession of the property in question for two or three years before the filing of the motion upon which this proceeding rests, all of which will appear as this statement progresses.

According to applicant's claim, Kelly, after such purchase, sub-let the premises to Timmons and Donnelly, who assigned their interest to a corporation known as the Donnelly-Timmons Amusement Company, and afterwards Kelly assigned his interest to movents and relators herein, and they claim that at the time of filing their motion they were in possession of the premises through their tenant, Donnelly-Timmons Amusement Company, nor were they ever in possession of the property in any other way.

Upon the return of the mandate of this court to the Circuit Court of Jackson County, an execution was duly issued in the ordinary form commanding the sheriff to restore the property to respondent and to collect the sum of $32,829.91, the amount of the damages and monthly rents and profits adjudged against the appellants and the cost of the suit.

The plaintiff dismissed the cause as to H. H. Tammen, F. G. Bonfils and the Empress Theatre Company.

In this connection attention should be called to the fact that the writ of restitution does not stop with ordering the sheriff to put out Kelly et al., but it is just as imperative that he put out of possession everybody else, and in this case F. G. Bonfils and H. H. Tammen were the men in possession as the assignees of E. P. Kelly.

On August 7, 1919, the day following the issuance of the writ of restitution, H. H. Tammen and F. G. Bonfils, as owners of the Empress Theatre Building and in possession of the lobby about which the unlawful detainer suit was brought, filed a motion to quash, not the execution, to which they were not parties, but the writ of restitution, which did run against them, because of the fact that they were in possession of the premises the sheriff was instructed to place the plaintiff in possession of. We here copy such portions of their motion as are important in this connection:

"Wherefore, the said F. G. Bonfils and Harry H. Tammen, the owners of the Empress Theatre Building, and the owners and holders of the lease on the property herein sought to be obtained, because of the facts above, pray the court that said writ of possession in so far as it directs the sheriff to take from these defendants their possession of the above described property, be set aside, quashed and for naught held."

The case came on for hearing before Division No. 2 of this court upon a motion to transfer it to the Kansas City Court of Appeals, which was sustained, and the cause was by it transferred to that court.

The motion to quash the execution came on for hearing, and the circuit court after hearing the motion was of the opinion that Bonfils and Tammen had no standing in court because of the opinion in the case of State ex rel. v. Clymer, 81 Mo. 122. On the 2nd of September, 1919, the court made the following order (omitting caption):

"Now on this day motion of defendants, Harry H. Tammen and F. G. Bonfils, to quash that portion of the writ of possession which directs the sheriff to deliver possession of certain property to the plaintiff, is by the court overruled; to which action and ruling of the court said defendants except."

Said defendants filed application and affidavit for appeal to the Supreme Court of Missouri, and said application was by the court sustained, and the appeal allowed to the Supreme Court of Missouri, and the cause was again assigned to Division No. 2 of this court.

The case was heard in the Kansas City Court of Appeals, and the judgment of the circuit court in overruling the motion to quash the writ of restitution was affirmed, and in doing so relators contend that the court refused to follow controlling decisions of this court and refused to be governed in its opinion by the clear, positive, mandatory provisions of the statute.

The relators then applied to this court for a writ of *certiorari* commanding the Kansas City Court of Appeals to certify the record in the case to this court, which was duly issued, and in obedience to its mandate that court, sent up a full transcript of the record in the case to this court. The case thus certified here is the case in hand.

There are a half dozen or more nice legal propositions presented by this record for determination, but the view we take of the case does not require us to consider more than one of them.

We shall first consider the contention of the relators that the judgment of the circuit court, that of the Court

State ex rel. Kelly v. Trimble.

**Jurisdiction:**
**Subject-Matter.** of Appeals and that of Division No. 2 of this court are void, because none of them acquired jurisdiction over the subject-matter of the case.

Before we enter upon the discussion of this question it may be well to look and see what the statute defines and! what law controls unlawful detainer cases. The former part of the question is fully and clearly answered by Section 2995, Revised Statutes 1919, which reads as follows:

"When any person shall willfully and without force hold over any lands, tenements or other possessions, after the termination of the time for which they were demised or let to him, or the person under whom he claims, or when any person wrongfully and without force, by disseizin, shall obtain and continue in possession of any lands, tenements or other possessions, and after demand made, in writing, for the delivery of the possession thereof by the person having the legal right to such possession, his agent or attorney, shall refuse or neglect to quit such possession, such person shall be deemed guilty of an unlawful detainer."

The two prominent features of this statute, in so far as this case is concerned, are (1) that when any person shall without force hold over the premises after the termination of the time for which they were let to him, or the person under whom he claims, and (2) after demand made in writing for the delivery of possession thereof by the person having the legal right to such possession, etc.

Section 2997, Revised Statutes 1919, provides the forum in which such suits shall be brought, and reads: "Forcible entries and detainers, and unlawful detainers, shall be cognizable before any justice of the peace of the county in which they are committed."

It will be noticed from reading this section that justices of the peace are given original and exclusive jurisdiction of all such suits, that is, no provision authorizes them to be brought elsewhere.

Section 2998, Revised Statutes 1919, provides for the filing of the complaint before the justice, the issuance of the summons for the defendant, and for the service of the same, which reads as follows:

"When complaint to any justice of the peace of the proper county shall be made in writing, signed by the party aggrieved, his agent or attorney, and sworn to, specifying the lands, tenements, or other possessions so forcibly entered or detained, or unlawfully detained, and by whom and when done, it shall be the duty of such justice to issue his summons under his hand, directed to the sheriff or any constable of the county, commanding him to summon. the person against whom the complaint shall have been made to appear before such justice, at a day in such summons to be specified."

Section 3000, Revised Statutes 1919, provides how service shall be had upon the defendants. In so far as here is material it reads: "Such summons shall be executed at least five days before the return day thereof, either: First, by reading the complaint and summons to the defendant; or, second, by delivering him a copy of the complaint and summons."

This section requires two things to be done in the service of the defendant, namely, (1) by reading the complaint and summons to the defendant, or (2) by delivering to him a copy of the complaint and summons. In other words he must be served in either case with the (1) summons and (2) the complaint.

It should be borne in mind that the forcible-entry-and-unlawful-detainer act is full and complete in itself, and that we are not authorized to draw upon other general provisions of the statutes to assist in its construction and enforcement. This rule is so elementary and well known that it would be a useless waste of time to cite authorities in support thereof.

It should also be borne in mind that the manner of instituting suits and service of process upon defendants, in an ordinary civil case, and service under the general

justice-of-the-peace act is entirely different from that regarding unlawful detainer suits.

Section 2733, Revised Statutes 1919, of the general justice-of-the-peace act, governing the ordinary civil action, reads as follows: "Suits may be instituted before a justice of the peace, either by the voluntary appearance and agreement of the parties or by process; and the process for the institution of a suit before a justice shall be either a summons or an attachment against the property of the defendant; if by agreement, the action is deemed commenced at the time of the docketing the case; if by process, upon delivery of the writ to the constable to be served; and he shall note thereon the time of receiving the same." In this class of cases it will be noticed that the suit before justices of the peace may be instituted in two ways: (1) by *"voluntary appearance and agreement of the parties"* or (2) by process, etc.

It should also be borne in mind that justice courts are courts of limited jurisdiction, and have no jurisidction or authority except what is conferred by the statutes.

The rule is stated substantially in this language: Local courts, those of limited jurisdiction, and inferior courts not proceeding according to the course of the common law, are confined strictly to the authority given, and the record of such courts must show the existence of all the facts necessary to give jurisdiction both of the subject-matter and the parties to the action. This rule is supported by the following decisions of this court: State v. Metzger, 26 Mo. 65; Hansberger v. Pacific Ry. Co., 43 Mo. 196; Edmonson v. Kite, 43 Mo. 176; Schell v. Leland, 45 Mo. 289; Iba v. H. & St. Joseph Ry. Co., 45 Mo. 469; Fisher v. Davis, 27 Mo. App. 321. There are many other cases announcing the same doctrine which are too numerous to mention.

And it has also been held that statutory jurisdiction (of courts, justice of the peace courts being among them) exists only by statutory warrant, and legislative omission to confer jurisdiction cannot be supplied by judicial construction. [Taaffe v. Ryan, 25 Mo. App. 563.]

This court has also held that jurisdiction over the party is acquired where he is personally served with process within territorial limits of the court. [Fithian v. Monks, 43 Mo. 502.] And in order to acquire jurisdiction in proceedings *in rem* there must be actual seizure and possession of the *res* by the officer of the court, or some cast of equivalent import. [Beyer v. Continental Trust Co., 63 Mo. App. 521.]

Returning to the legal proposition in hand, and if viewed in the light of the statutes and decisions before cited, we ought not to go far wrong in the discussion of that proposition.

Now how does the justice acquire jurisdiction over the person and subject-matter of suits of unlawful detainer?

It should be borne in mind that Section 2998, Revised Statutes 1919, supra, requires two things to be done in order to put the court in motion: first, the filing of a complaint, as required by said section, and, second, issuance of a summons as required by the same section.

After said complaint is filed with the justice and he issued said summons, Section 3000, Revised Statutes 1919, supra, tells us how it must be served in order to confer jurisdiction upon the justice over the person of the defendant, and the subject-matter of the suit. Now what are those two requirements? The constable must first either read the complaint and summons to the defendant, or second, deliver him a copy of that complaint and summons. The performance of both of these things are imperatively required; the service of the summons gives the court jurisdiction over the person of the defendant and the service of the complaint alone gives it jurisdiction over the *res* of property; and there is no other way under the sun by which the justice can acquire jurisdiction over the person of the defendant and the subject-matter of such suits.

The defendant in this class of cases cannot enter his appearance in the case, and thereby confer jurisdiction

over his person, as he can do in the ordinary case brought before a justice under the general justice of the peace act, as is expressly authorized by Section 2733, Revised Statutes 1919, supra, and this is because the justice of the peace courts in this class of cases have no jurisdiction or power, except that which is given by the statute. But consider only for the sake of argument, that the entry of the appearance of the defendants waived personal service as is authorized by the general justice act, before referred to and said Section 2733, yet there is no pretense made that the complaint was ever served upon the defendants, or that the justice ever acquired jurisdiction over the *res* the property by the service of the complaint as is expressly required by said Section 3000, Revised Statutes 1919, supra, and which as a matter of fact was never served upon them, which is the original and exclusive way for the justice to acquire jurisdiction over the *res*. This is expressly decided by this court in the case of Fithian v. Monks, 43 Mo. 502, supra, where the court used this language: ''Jurisdiction of the cause is the power over the subject-matter given by the laws of the sovereignty in which the tribunal exists.''

Now we have heretofore shown that the laws of this Sovereignty or State make but one provision by which the justice can acquire jurisdiction over the *res* or property in an unlawful detainer suit, and that is found in Section 3000, Revised Statutes 1919, supra, and that is by serving the complaint upon the defendants, which they are required to answer, as provided by said Section 3000, Revised Statutes 1919.

The same question is in principle decided by the Court of Appeals in the case of Beyer v. Continental Trust Co., 63 Mo. App. 521, supra, where it is held that in order to acquire jurisdiction of proceedings *in rem* (and unlawful detainer suits partake of proceedings *in rem*) there must be actual seizure and possession of the *res* by the officer of the court, or *some acts of equivalent import*. The service of the complaint upon the defend-

ants in this class of cases is the act of equivalent import mentioned in the last cited case.

The doctrine herein announced not only applies in unlawful detainer suits before justices of the peace, but, in a limited sense, to all actions both legal and equitable in the circuit courts; the petitions in actions at law, and the bills in equity in equitable proceedings, must be filed in court and served upon the defendant before the court can acquire jurisdiction over the subject-matter of the case, for the purpose of trial, and this is true, notwithstanding the defendant may have been served with proper summons in the case. It is the petition or bill that gives the court jurisdiction over the subject-matter of the particular action, and not the service of the summons upon the defendant.

I do not want to be misunderstood by the use of the language contained in the last paragraph, for I have there tried to limit the parallel to the subject-matter alone of each of said courts, because the jurisdiction of each of said courts acquired over the parties to the actions is entirely different, but not so as to the subject-matter thereof, which must be acquired as prescribed by law applicable to each. The point I am trying to make is that the jurisdiction over a particular or concrete case by either of said courts can only be acquired over the subject-matter in the manner and in the way specified by the statute applicable to each; the principle requirement in each is the account or complaint filed with the justice, or the petition or bill filed in the circuit court. In other words, neither of said courts can obtain jurisdiction over the subject-matter of the case, without filing the account or complaint in the one, or the petition or bill in the other, which is the basis of all suits, and which constitutes the matters the defendant in each of said courts is summoned to answer and must be served as provided by the statute.

The jurisdiction of each of said courts over the parties to the suits pending therein is an entirely different thing, and the legal requirements to accomplish that ob-

ject are entirely different. In justice-of-the-peace courts, as previously shown, in unlawful detainer cases, the court can only acquire jurisdiction over the defendants either (1) by reading the summons and the complaint or (2) by leaving a copy of the summons and complaint with the defendant; while in all other cases pending in the justice courts, as previously shown, jurisdiction may be acquired by voluntary entry of appearance, or service of the summons upon him, and in the circuit court by voluntary appearance of the defendant or by service of summons upon him.

Section 1182, Revised Statutes 1919, says: "Suits may be instituted in courts of record, except when the statute law of this State otherwise provides, either, first, by filing in the office of the clerk of the proper court a petition setting forth the plaintiff's cause or causes of action, and the remedy sought, and by the voluntary appearance of the adverse party thereto; or, second, by filing such petition in such office, and suing out thereon a writ of summons against the person or of attachment against the property of the defendant. The filing of a petition in a court of record, or a statement or account before a court not of record, and suing out of process therein, shall be taken and deemed the commencement of a suit."

Or as authorized by Section 1187, Revised Statutes 1919, the defendant may waive service and acknowledge in writing under his own signature the service of the writ. That section reads as follows: "When a defendant shall acknowledge in writing, indorsed on the writ, signed by his own proper signature, the service of such writ, and waive the necessity of the service thereof by an officer, such acknowledgment shall be deemed as valid as service in the manner provided by law."

There is no pretense made that the complaint was ever served upon the relators, which alone could confer jurisdiction upon the justice court.

There is another distinction existing between the

services of summons upon the defendant in a justice court, and the circuit court. As before shown, justice courts are local courts, not proceeding according to the common law, but by authority of the statutes. Their jurisdiction exists only by virtue of said statutory warrant, while the circuit courts are courts of general jurisdiction and proceed according to the common law, and therefore can act according to common law, if not limited or prohibited by the Constitution, or statutory enactment. [Schell v. Leland, 45 Mo. 289; Gates v. Tusten, 89 Mo. 13; McClanahan v. West, 100 Mo. 309.]

The question of jurisdiction may be raised at any stage of the proceedings. [State v. Lawrence, 45 Mo. 492; Henderson v. Henderson, 55 Mo. 534; Graves v. McHugh, 58 Mo. 499.] Even by motion after judgment (Baker v. Hannibal & St. J. Ry., 36 Mo. 543), and for the first time in the Supreme Court, (Henderson v. Henderson, 55 Mo. 534; Graves v. McHugh, 58 Mo. 499; Davis v. Jacksonville Line, 126 Mo. 69).

Nor can the question of jurisdiction be waived by entry or appearance or by express stipulation, and want of jurisdiction may be taken advantage of at any time before or after trial. [Abernathy v. Moore, 83 Mo. 65; Christian v. Williams, 111 Mo. 429.]

And may be questioned and may be determined on appeal or writ of error. [Blecker v. St. Louis Law Comm., 30 Mo. 111; Webb v. Tweedie, 30 Mo. 488.]

"The question of jurisdiction is not sprung by counsel. Whether it exists or not springs spontaneously for inquiry at any step, at any time, in any case, and must be considered by the court. . . . The question of jurisdiction is self-asserting in every case. It arises although the litigants are silent. Even their consent cannot authorize proceedings, if fundamental grounds of jurisdiction are absent. The question of jurisdiction can be raised in any manner and at any time, and this court must raise it *sua sponte*." [Ry. Co. v. Schweitzer, 246 Mo. 122, 151 S. W. 128; Electric Service Co. v. Gill Mfg.

State ex rel. Kelly v. Trimble.

Co., 125 Mo. 140; Little River Drainage Dist. v. Houck, 222 S. W. 384, l. c. 385.] With appellate jurisdiction fixed by the record, *nisi*, in this court, neither party can change that jurisdiction by mere waiver of the jurisdictional question. We determine our own jurisdiction without the consent or action of either or both parties. Jurisdiction is not the subject-matter of consent. We mean jurisdiction of the subject-matter. Neither party, after there has been a fixed record in the trial court, as here, can change the jurisdiction of this court upon the case by either acts of omission or commission. The *record nisi* fixes the jurisdiction, and not the acts of the parties."

In Bray v. Marshall, 66 Mo. 122, l. c. 123, it is said: "The objection that the circuit court had not jurisdiction of the subject-matter of the action may be made for the first time in this court. As the land sued for was situate in Dade County, the subject-matter of the action was not originally within the jurisdiction of the Circuit Court of Greene County, and it could only acquire jurisdiction thereof *by operation of law. The consent of the parties could not confer it.*"

In Fields v. Maloney, 78 Mo. 172, l. c. 176, it is said: "Neither is it waived by apperance and answer; nor can it be conferred by consent or agreement of parties; but only by the law. It may also be taken advantage of at any stage of the proceeding, either in the lower court or that of last resort."

Of course their judgments and orders are presumed to be valid and binding upon all parties to the action, if acting within the scope of their jurisdiction. But there is no such power or presumption existing in a justice court; they can act only according to the clear warrant of the statute, as previously shown.

"An absolute want of jurisdiction of the subject-matter or cause of action cannot be waived, nor can the doctrine of equitable estoppel be invoked to confer a jurisdiction on a tribunal which has not jurisdiction of the subject-matter." [1 Freeman on Judgments, chap.

State ex rel. Kelly v. Trimble.

8, secs. 117-119.] Section 117, entitled "Effect of Void Judgments," reads: "A void judgment is in legal effect no judgment. By it no rights are divested. From it no rights can be obtained. Being worthless in itself, all proceedings founded upon it are equally worthless. It neither binds nor bars anyone. All acts performed under it, and all claims flowing out of it, are void. The parties attempting to enforce it may be responsible as trespassers. The purchaser at a sale by virtue of its authority finds himself without title and without redress. The first and most material inquiry in relation to a judgment or decree, then is in reference to its validity. For if it be null, no action upon the part of the plaintiff, no inaction upon the part of the defendant, no resulting equity in the hands of third persons, . . . can invest it with any of the elements of power or of vitality."

According to the law announced in the foregoing authorities, in our opinion there can be no doubt but what the judgment of the Court of Appeals is a nullity and should be quashed, and the record of that court is accordingly quashed and held for naught. *Higbee* and *Elder, JJ.,* concur; *James T. Blair* and *David E. Blair, JJ.,* dissent; *Walker* and *Graves, JJ.,* concur in the result.

JAMES T. BLAIR, J. (dissenting).—The core of the opinion is the holding that in unlawful detainer a justice of the peace can acquire no jurisdiction *of the subject-matter* unless there is service upon the defendants, either personal or by publication; that a defendant cannot appear in such a proceeding and give jurisdiction to proceed. In the opinion it is stated that there is no pretense that the complaint was ever served upon the relators. The Court of Appeals in its opinion refers to the service in the unlawful detainer action and, according to the principle of numerous decisions, thereby brings into the record the constable's return of service, if the service is to be questioned. That return is found on pages 40 and

State ex rel. Kelly v. Trimble.

41 of the record before the Court of Appeals and in so far as it has to do with Harry H. Tammen (one of the relators in this court) and Paul LeMarquand and A. Le-Marquand is to this effect: "Executed this writ in the Township of Kaw, this 2nd day of November, 1915, by reading the same complaint and summons to the within named defendant Harry H. Tammen, Paul LeMarquand, A. LeMarquand." Duly signed. In their briefs in the Court of Appeals relators did not question the fact or the sufficiency of the service on the three last named defendants. In their application to this court for the writ of *certiorari* they did not question it. In their suggestions in support of their application in this case they expressly state the facts of such service on the three. In their brief in this case (pp. 52, 53) the service upon three of the defendants is treated as a fact and an argument based upon it as such. Relators do not deny it. Their position has been that service upon *all* defendants in an action for unlawful detainer was necessary to give *any* of the seven defendants the right to sue out a writ to remove the case into the circuit court; that the writ must be sued out by all or it cannot be sued out at all.

It is clear that no decision cited in the opinion holds as the court holds in this case. No conflict is made to appear between any decision of this court and the construction given the statutes in this case on the point actually decided by the Court of Appeals. In fact the Court of Appeals followed, closely in principle, decisions of this court. [Ser v. Bobst, 8 Mo. 506; Hulett v. Nugent, 71 Mo. l. c. 135.] If it be said that the question of conflict is not determinative here because this court is holding that the circuit court and the court of appeals (and this court) never had jurisdiction, then this decision is squarely in conflict with that in State ex rel. Coonley v. Hall, 296 Mo. 201, which was handed down December 6, 1922. By the ruling in that case the Court of Appeals is a court of final jurisdiction on the questions of its jurisdiction arising out of the record before it quite as much

as upon other questions in the case. Cases are cited. The cases mentioned are necessarily overruled by the decision in this case, though no reference is made to them.

Further, if it is meant, and that is necessarily implicated, that a plaintiff in unlawful detainer may not proceed to judgment against less than all of the defendants named in the justice's court, the ruling is in conflict with other decisions and authorities.

Since the holding of the Court of Appeals, that jurisdiction of the person and to proceed in unlawful detainer can be conferred by appearance, is not in conflict with any decision of this court on the point, that question is not before this court for decision on its merits. Nevertheless, since the majority opinion expressly decides it, there can be no impropriety in saying that, on the merits of that question, this court ought not construe the statutes as the majority opinion does unless they are subject to no other reasonable construction. The idea that one may not appear in a case, but must be summoned, to confer jurisdiction, is out of harmony with the correct conception of the function of service. Service is a means of bringing one into court against his will. It is a means of doing something for which there can be no need if the party comes into court voluntarily. It is notice of the suit. The statutes in question do not declare that one may not voluntarily take notice and appear and go on with the case. They ought not to be so construed unless they make such a meaning clear. This they fall short of doing.

These are some of the reasons because of which I am unable to concur. Very respectfully, I dissent.

ON MOTION FOR REHEARING.

WOODSON, C. J.—Through inadvertence or oversight the dissenting opinion of the last Chief Justice in this case has been overlooked by me. Since, however, my attention has been called to it, I fear I have shot far of the mark in the majority opinion, if he and Judge

DAVID BLAIR are right in the minority opinion. In the majority opinion I proceed upon the theory that neither the justice of the peace, the circuit court, the Court of Appeals, nor Division No. 2 of this court could acquire jurisdiction of the subject-matter of the case of Gary v. Kelley et al., for the reasons stated in .the majority opinion, and therefore had no power or authority to render any judgment herein except one dismissing the proceedings. Any other .judgment would justify a justice of the peace, the probate court, the county court, the circuit court, the court of appeals or this court or any other court, State or Federal, in attacking its validity either directly or collaterally, because of the want of the jurisdiction of the justice of the peace over the subject-matter of the case.

That being true I thought that it was but a natural consequence that this court in a proceeding by way of *certiorari* of which it always has had jurisdiction, under and by authority of the express provisions of the Constitution of the State, to quash the record of a justice of the peace, and of all other courts in the State, which attempt to assume jurisdiction over a case where, under the law, it, or they, have none. In this connection I want it to be distinctly understood that I did not place the majority opinion in that class of cases in which this court has repeatedly held that we have no power or authority to go behind the power or authority of the Court of Appeals to decide a case as it sees fit, so long as it does not violate the last controlling opinions of this court in any particular case, but proceeded upon the bold and independent principle that neither a justice of the peace court nor any other court in this State, under the proceedings filed in this case, had jurisdiction over the subject-matter to render a valid judgment of any kind herein.

I have always understood that this court has the undoubted authority to prevent any court within its jurisdiction from rendering judgment in any case over which

297 Mo.—9

it has no jurisdiction, which would take the property or money of one person and give it to another without due process of law, whether it violates the last controlling rulings of this court or not.

(I write this opinion for the sole purpose to show the bench and bar of the State that some of my learned brethren have misconceived the majority opinion).

That being true, I thought that it was but a natural consequence that this court in a proceeding by way of *certiorari* of which we had jurisdiction could pass upon the jurisdiction of all courts of this State to render any judgment in this case, which would authorize the plaintiff to recover of the defendants the sum of $50,000 or more or less as the case may be. I did not proceed in the majority opinion on the theory that this court was limited in our jurisdiction, and simply to inquire whether or not the Court of Appeals had failed to follow the last controlling decisions of this court, but upon the broader ground that neither that court nor any other court in this State acquired jurisdiction of the subject-matter of this case for the reasons stated in the majority opinion. This court has always had the power and authority to inquire into any kind of a proceeding that may come before it, either directly or even collaterally, just as the judgment might properly be attacked even collaterally in any or all courts of this State from a justice of the peace court to the Supreme Court.

If our last Chief Justice is correct in his major premise that this court was limited in its jurisdiction to make inquiry as to whether or not the Court of Appeals followed the last controlling decision of this court, then in my opinion his conclusion would be correct, but as I look at this case, his major premise has nothing under the sun to do with this case, but the majority opinion holds, and correctly so, in my opinion, that neither the Court of Appeals, nor any other court in this State, regardless of its name, acquired any jurisdiction over the subject-matter so as to render any judgment in this case

whatever, except to dismiss the original proceeding of forcible entry or unlawful detainer, whichever it may be designated. That being unquestionably true, how could we prevent quashing the record of the Court of Appeals, which undertook to take $50,000 from the defendants, when it had no jurisdiction whatever to render the judgment we quashed?