**Don Mike PETRIE and Bertha E. Petrie, Respondents,**

v.

**Larry J. LeVAN, Appellant.**

**No. WD 42377.**

Missouri Court of Appeals, Western District.

Nov. 27, 1990.

Jorge A. Elliott, Kansas City, for appellant.

Jim R. Petrie, Raytown, for respondents.

Before KENNEDY, P.J., and SHANGLER and GAITAN, JJ.

SHANGLER, Judge.

This action by the plaintiffs Petrie alleges an unjust enrichment by the defendant LeVan of $2176.22 and seeks restitution in that amount. The court entered judgment on the pleaded theory and for the amount prayed, and the defendant LeVan appeals. That judgment and appeal are sequels to a judgment rendered for the plaintiffs Petrie on a pleading for breach of a real estate contract. We determined that breach of contract was not proven and reversed the judgment. We remanded as a matter of appellate discretion nevertheless to enable the plaintiffs to amend their petition to allege a remedy in equity—a possibility suggested by the facts in evidence. The pleading alleged the unjust enrichment by the defendant LeVan at the expense of the plaintiffs Petrie and sought its restitution. It is the judgment on that amended pleading that we now review.

The subject matter of both litigations and judgments was the sale of a residence property by LeVan to the Petries. The operative facts are common to both and are fully reported in *Petrie v. LeVan*, 762 S.W.2d 103 (Mo.App.1988). They are not in dispute and are readily restated.

A contract for the sale of the residence for $66,500 was executed by the parties on July 11, 1986. The sale was contingent upon the approval of a VA loan for $62,500. The closing of the transaction was scheduled for September 24, 1986. An FHA Certification document, wherein each signatory attested to have physically inspected

all appliances, plumbing, heating and electrical systems and roof, and found them to be in proper working order at the time of closing was a concomitant of the real estate sale transaction. A certification to that effect was executed by LeVan on September 22, 1986, as was the separate certification executed by the Petries. The Petries had in fact inspected the premises before the execution of the certification and had found the roof intact. The closing was transacted on September 24, 1986 as scheduled. It was not then known to any of the parties, but on the night before—on September 23, 1986—a severe storm damaged the roof of the residence property. The Petries discovered the casualty on the night of September 24, 1986, after the closing. LeVan was informed of the damage and was requested to submit a claim to his insurance carrier. The insurer settled the claim with LeVan for $2,176.22, who then refused the request of the Petries to remit the money to them to make the needed repair. LeVan has retained the $2,176.22 insurance proceeds as well as the entire contract price of $66,500 for the sale of the residence property. The Petries have made repairs to the roof at a cost in excess of $2,176.22.

The right the original petition sought to vindicate was the contract promise by LeVan as seller to convey the property in good repair. The remedy the original petition sought was damages for breach of that contract promise. We determined, however, that there was no contract term that the seller convey the property in good repair, therefore the refusal by LeVan to make repairs—or to pay over the insurance proceeds—for the damage done to the property before conveyance was not a breach of contract. There was an option to the buyer to cancel the contract or have a refund, rather than to enforce the contract, if the property was substantially damaged by fire, lightning or other casualty before the delivery of the deed. But there was no term that obligated the seller to maintain insurance on the property. Under the operation of the contract, rather, the risk of loss by casualty before the delivery of the deed was on the seller. Thus, the policy of insurance purchased by LeVan was intended for his own benefit. These are the essential holdings of *Petrie v. LeVan*, 762 S.W.2d 103 (Mo.App.1988).

The right the amended petition sought to vindicate was the redress of the unjust enrichment by LeVan at the expense of the Petries. The remedy the amended petition sought was the restitution to the Petries of the insurance proceeds to repair the premises, money unfairly retained by LeVan, although already fully compensated for the property.

On the appeal from the judgment for restitution entered for the Petries, LeVan argues that since no provision of the express contract required the seller to maintain the property between the date of the contract for sale and the delivery of the deed, none can be implied. That is to say, the existence of an express contract between the parties precludes any recovery for unjust enrichment on an implied contract or in equity. LeVan argues moreover that unjust enrichment rests on principles applicable to constructive trusts, a device of equity to restore property wrongfully lost in cases of fraud. LeVan concludes that since there was no evidence of fraud or other wrongful conduct by him that worked disadvantage to the Petries, and since in any event the rights and obligations of the parties were defined in the contract, there was no basis for any right of unjust enrichment nor for any remedy of restitution.

■ A person who has been unjustly enriched at the expense of another is required to make restitution to the other. Restatement of Restitution § 1 (1937). The principle against unjust enrichment emerged against the grain of the common law forms of action then available for remedy and with the aid of the restitution devices of the equity court. D. Dobbs, Handbook on the Law of Remedies § 4.1 (1973). The common law courts overcame this limitation on remedies imposed by the forms of action through the fiction of *quasi contract*. The law gave to a plaintiff against a defendant "under an obligation, from the ties of natural justice, to refund," an action

"as if it were upon a contract." *Moses v. McFerlan,* 2 Burr. 1005, 1008, 97 Eng.Rep. 676 (K.B. 1760). The equity courts independently developed restitution remedies against unjust enrichment. The fiction of constructive trust was used in cases of fraud or breach of fiduciary duty to reach the gains that, in conscience, belonged to another by treating the fraudulent procurer as a trustee. 1 G. Palmer, Law of Restitution § 1.3 (1978). The constructive trust also became the means for restitution from one unjustly enriched by the mistake of another, even though the mistake was not induced by fraud or misrepresentation. Restatement of Restitution § 163 (1937).

 The argument that LeVan asserts, therefore, that since the transaction with the Petries was touched by neither fraud nor other wrongdoing there was no unjust enrichment to him by the retention of the insurance proceeds nor ground for any restitution, simply does not avail. Nor does the fact that the contract between them was fully performed as undertaken, where, [as here] the benefit conferred on the other party—and upon which the claim of unjust enrichment rests—results from reliance on the contract. 2 G. Palmer, Law of Restitution § 7.2(b) (1978). The right to restitution based upon unjust enrichment is not confined by the form of action or by the traditional limits of law or equity jurisdiction. It operates on equitable principles, but draws its source from law as well as equity. It cuts across contract and tort and stands separately.[1] *Farmers New World Life Ins. Co. v. Jolley,* 747 S.W.2d 704, 705 (Mo.App.1988); D. Dobbs, Handbook on the Law of Remedies § 4.1 (1973). It is a claim to relief, therefore, most apt for vindication by a system of pleading,

such as our own, that acknowledges only one form of action—the *civil action.* Rules 42.01, 55.04 and 55.05.

 A person who confers a benefit upon another because of a mistake is entitled to restitution if the mistake caused the conferring of the benefit. Restatement of Restitution § 9 (1937). The right to restitution for unjust enrichment presupposes: (1) that the defendant was enriched by the receipt of a benefit; (2) that the enrichment was at the expense of the plaintiff; (3) that it would be unjust to allow the defendant to retain the benefit. R. Goff & G. Jones, The Law of Restitution p. 14 (1966); *see Green Quarries, Inc. v. Raasch,* 676 S.W.2d 261, 264[9] (Mo.App.1984); Restatement of Restitution § 1, comments a, b & c (1937). Thus, a person who has received money from another by mistake, money that in equity and good conscience the person ought not to keep, may be compelled to make restitution—even though the mistake was an honest one. *Western Casualty & Sur. Co. v. Kohm,* 638 S.W.2d 798, 800[3–5] (Mo.App.1982).

 There is no doubt that the first postulate of this formulation is actual: LeVan was enriched by the receipt of both the full purchase price for the residence property and the insurance proceeds that represented a part of that property. Nor is there doubt that the purchase price was paid by the Petries—and received by LeVan—under the mistake that the property was then intact. It is also a fact that LeVan freely accepted the insurance proceeds, and retained them, even after knowledge of the circumstances that attended the payment for the property. The question here is not

---

1. "Underlying all the law of restitution is the conception that no one should unjustly enrich himself at the expense of his neighbour. This conception is too indefinite to be stated as a principle of law: but it sufficiently indicates a new category. Just as the conception of contract is the enforcement of promises, and the conception of tort is damages for wrongdoing, so the conception of restitution is to prevent unjust enrichment. Once this category comes to be accepted into the law, the courts will no longer find themselves forced to fit all remedies into the straitjackets of contract and tort, but

will be able to develop a comprehensive category with its own with distinct principles." Denning, The Changing Law 65 (1953).

This concept of Lord Denning of restitution as a basic element of the framework of the law as now evolved has the affirmation of preeminent commentators and treatises. *See* 1 G. Palmer, The Law of Restitution § 1.1, n. 16; R. Goff & G. Jones, The Law of Restitution pp. 11–13 (1966); D. Dobbs, Handbook on the Law of Remedies, p. 225 (1973); Restatement of Restitution (1937).

that of an enrichment, but a composite of elements (2) and (3) of the claim: whether LeVan was enriched at the expense of the plaintiffs so that, in the circumstances, it would be unjust to allow LeVan to retain the benefit.

In that assessment, it is not the power of equity to order specific performance, injunction, or some variant of equitable conversion by contract as to the insurance proceeds that is invoked. *See, e.g., Skelly Oil Co. v. Ashmore*, 365 S.W.2d 582 (Mo. banc 1963) and *Reed v. Foulkes*, 675 S.W.2d 695 (Mo.App.1984). It is equitable principle and good conscience that govern. *Farmers New World Life Ins. v. Jolley*, 747 S.W.2d at 705. In this case, it is the equitable principle against double recovery that disallows LeVan from retention of both the insurance proceeds and the full purchase price of the property and that good conscience requires that LeVan pay over to the Petries. If LeVan may keep the proceeds of the insurance and also the full purchase price, he has a windfall. LeVan is compensated for that which he did not lose and the Petries pay for that which they did not receive. *See* 4 G. Palmer, Law of Restitution § 23.2, p. 350 (1978).

■ Nor does the neglect by the Petries to reinspect the property on the very day of the closing render it inequitable to require payment of the insurance proceeds to them or justify the windfall to LeVan. The inspection by the Petries, and their certification, that the roof and other systems of the residence were intact and in working order, were sufficiently contemporaneous with the transfer of deed two days later to dispel any inference that they assumed the risk of their mistake as to the condition of the property, and so are not in fairness entitled to claim that Levan was unjustly enriched at their expense. Restatement of Restitution § 11 (1936); *See Blue Cross Health Services, Inc. v. Sauer*, 800 S.W.2d 72, 75 (Mo.App.1990).

■ The trial court properly entered judgment for the Petries for $2,176.22, the sum of money received by LeVan from the insurance policy, and a sum less than the damage done by the insured event. To prevent an unjust enrichment by the Petries at the expense of LeVan, nevertheless, the trial court should have reduced the judgment by the cost to LeVan of the insurance premium.

■ To defeat the judgment LeVan argues the rules of *res judicata* and of consistent remedies. The effect of our remand for amendment of petition and retrial in *Petrie v. LeVan*, 762 S.W.2d 103 (Mo. App.1988) was to preclude finality for that adjudication, and hence, the effect of *res judicata*. It was an act of discretion in furtherance of justice fully within the authority of an appellate court. *Fairbanks v. Chambers*, 665 S.W.2d 33, 40[11] (1984). The rule of consistent remedies, moreover, merely bars a suitor from recovery on one theory where the claim has already been satisfied on another. It serves to prevent a double satisfaction. *David v. Hauschild*, 243 S.W.2d 956, 959[2–4] (Mo.1951). It has no application here. The Petries have yet to have a satisfaction.

The case is remanded for entry of a new judgment. The trial court is directed to determine the cost to LeVan of the insurance premium and to subtract, pro rata, the unused premium as of the date of the loss from the $2,176.22 benefit for the entry of the new judgment.

All concur.