STATE ex rel. Claudia J. YORK and James S. Stubbs, Relators,

v.

Honorable Jay A. DAUGHERTY, Administrative Judge, Family Court Division, Circuit Court of Jackson County, Respondent.

No. 80742.

Supreme Court of Missouri, En Banc.

June 16, 1998.

Claudia J. York, James S. Stubbs, Kansas City, pro se.

Harlene J. Hipsh, Legal Counsel Jackson County Circuit Court, Kansas City, for Respondent.

Marvin E. Wright, Missouri Bar President, Jefferson City, Douglas E. Abrams, Columbia, for Amicus Curiae.

PER CURIAM.

On June 10, 1996, Family Court Commissioner Sherrill L. Rosen ("Commissioner Rosen") entered a purported judgment dissolving the marriage of Claudia J. York and James S. Stubbs ("Relators"). Commissioner Rosen acted pursuant to section 487.030,[1] which states that "findings and recommendations of [a] commissioner [regarding family court actions] shall become the judgment of the court when entered by the commissioner." Nearly two years after Commissioner Rosen's purported judgment dissolving Relators' marriage, this Court held that documents signed solely by a commissioner are not final appealable judgments because they "are not signed by a person selected for office in accordance with and authorized to exercise judicial power by article V of the state constitution." *Slay v. Slay*, 965 S.W.2d 845 (Mo. banc 1998). Implicit in this holding is that section 487.030 is unconstitutional, at least so far as it authorizes commissioners to enter judgments. Since this Court's decision in *Slay*, there has been widespread and justifiable concern among the circuit courts regarding the validity of hundreds of purported judgments that were entered by family court commissioners under section 487.030. In reaction to the *Slay* decision, the Honorable Jay A. Daugherty ("Respondent"), a circuit judge who serves as the administrative judge of the family court division of the Jackson County Circuit Court, began entering "final judgments" in family court actions that had originally been decided by commissioners under section 487.030. In particular, on April 9, 1998, Judge Daugherty entered a "judgment" in Relators' dissolution of marriage action, confirming and adopting the findings and recommendations made by Commissioner Rosen on June 10, 1996. The effect of Respondent's action arguably was that the judgment in Relators' dissolution of marriage action became effective on April 9, 1998, rather than on June 10, 1996.

This Court entered a substitute preliminary order in prohibition and/or mandamus on April 27, 1998, ordering Respondent to set aside the "judgment" of April 9, 1998, and prohibiting Respondent from taking any further action in this case until ordered by this Court. This Court now holds that the rights of the parties were concluded by the June 10, 1996, "judgment" of the commissioner.[2]

A writ of mandamus is the appropriate method for a party to enforce a right that is "clearly established and presently existing." *State ex rel. Chassaing v. Mummert*, 887 S.W.2d 573, 576 (Mo. banc 1994). By contrast, prohibition will lie only where necessary to prevent a usurpation of judicial power, to remedy an excess of jurisdiction, or to prevent an absolute irreparable harm to a party. *Id.* at 577.

The argument of the relators relies primarily on the rarely applied theory of prospective application of a constitutional ruling. However, there are other reasons more deeply rooted in precedent for holding that the rights between the parties to this case are fully resolved by the purported judgment of a commissioner. These reasons are the complementary doctrines of waiver and estoppel.

Constitutional violations are waived if not raised at the earliest possible opportunity. *Adams v. Children's Mercy Hospital*, 832 S.W.2d 898, 907 (Mo. banc 1992) (rejecting as untimely the following constitutional claims: equal protection, one subject, privileges and immunities, constitutional directives for amending statutes, prohibition against special laws and separation of powers). Even a person convicted by an unconstitutionally composed jury must bring that claim to the attention of the trial court. *Davis v. United States*, 411 U.S. 233, 240, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973). This Court has also held that failure to raise a constitutional challenge to a statute in a proceeding before an administrative agency or on review of the agency's decision waives

1. All references to section 487.030 refer to section 487.030, RSMo Supp.1997, which became effective May 15, 1996.

2. The Court expresses its appreciation to Professor Douglas E. Abrams, University of Missouri–

Columbia School of Law, and Marvin E. "Bunky" Wright, President of The Missouri Bar, for the excellent briefs they submitted as amici curiae.

that claim. *City of Chesterfield v. Director of Revenue*, 811 S.W.2d 375, 378 (Mo. banc 1991). The critical question in determining whether waiver occurs is whether the party affected had a reasonable opportunity to raise the unconstitutional act or statute by timely asserting the claim before a court of law. *Callier v. Director of Revenue*, 780 S.W.2d 639, 641 (Mo. banc 1989) (waived only if "good pleading and orderly procedure" allow the party to raise the constitutional question). One exception to the waiver doctrine usually noted is where there was a lack of subject matter jurisdiction in the forum where the waiver occurred. But even an absence of jurisdiction is not necessarily an obstacle to a judgment having a conclusive effect on the rights of the parties.

■ The parties to a void judgment are estopped from raising a claim of lack of jurisdiction to enter a judgment in some circumstances.

"It has often been said that a void judgment is no judgment; that it may be attacked directly or collaterally.... It neither binds nor bars anyone.... [Y]et, notwithstanding, a party to such judgment may voluntarily perform it, by paying the amount adjudged against him and, when paid, no inquiry will be made as to the validity of the judgment; or he may perform the acts required by a void decree, or accept its benefits, and thereby estop himself from questioning the decree. In other words, a party to a void judgment or decree may be estopped from attacking it, either directly or indirectly."

*Tremayne v. City of St. Louis*, 320 Mo. 120, 6 S.W.2d 935, 936 (1928) (quoting *Mohler v. Shank*, 93 Iowa 273, 61 N.W. 981, 984 (1895)); *see also RCA Mut. Ins. Co. v. Sanborn*, 918 S.W.2d 893, 897 n. 6 (Mo.App.1996), and *Matter of Estate of Tapp*, 569 S.W.2d 281, 285 (Mo.App.1978) (one accepting and retaining benefits of a void judgment is estopped to deny the validity of any part thereof, or any burdensome consequences, even where invalidity arises from want of subject matter jurisdiction). In nearly all classes of cases acted on by a family court commissioner, the judgment carries with it both burdens and benefits for each party.

■ Here the legislature enacted a presumptively constitutional but flawed statute that was not challenged on constitutional grounds until this Court did so sua sponte in *Slay*. Yet the statute also provides a mechanism for testing the correctness of the commissioner's determination before a circuit judge, including the opportunity to claim that the statute was unconstitutional. *See sec. 487.030.2. Slay* did not declare the portion of the statute authorizing review by a circuit court judge to be unconstitutional. One who fails to timely take advantage of that mechanism has waived any objection to the commissioner's authority, findings and legal conclusions and a party who assumed the benefits or burdens of such "judgment" is estopped from attacking it, as if sec. 487.030 were constitutional in its entirety. This waiver of the constitutional claim and estoppel against challenging the purported judgment extends not only to the parties but also to third parties who acquired rights or obligations by or through a party to the purported judgment. Thus, as to any such party, the commissioner's findings and recommendations are as conclusive as if entered as the judgment of an article V judge.

The application of the doctrines of waiver and estoppel is grounded in part on the parties' reasonable reliance on the legitimacy of the commissioner's purported judgment. By granting limited *past* efficacy to the purported judgments of commissioners, we are not compelled to sanction *future* unconstitutional practices by commissioners. Presumably, circuit judges stopped permitting commissioners to enter unconstitutional "judgments" after this Court's mandate was issued in *Slay*. After this Court concludes that a statute is unconstitutional, parties can no longer reasonably rely on the statute as a basis for continued entry of void judgments.

■ A separate issue exists with regard to the efficacy of judicial process issued in the future, such as execution or garnishment, to enforce the purported judgments. Because the commissioner's findings and recommendations are conclusive as to the rights of the parties, neither party may complain of the validity of any enforcement process. However, that does not mean that circuit court

judges are prohibited from entering judgment in cases where a commissioner has imposed executory or future obligations. It is quite common for judgments in domestic relations cases to assign both retroactive and prospective rights and duties. It is also common to enter a judgment renewing a prior judgment in response to a motion to revive a judgment, Rule 74.09, or to correct technical deficiencies in a judgment by entry of orders nunc pro tunc, Rule 74.06(a). Nothing prohibits a circuit judge from entering a judgment consistent with the commissioner's decision in those circumstances. While such retroactive, renewed or corrected judgment may be appealable, claims regarding the commissioner's decision that could have been, but were not, raised in a timely fashion before a circuit judge would be deemed waived.

The mere absence of the necessity of a judicial act is not a basis for granting the extraordinary relief of mandamus or prohibition. One may question whether it is necessary for the circuit judge in this case to enter a judgment in conformity with that of the commissioner since neither party is seeking such relief. But it is also true that no prohibition on doing so is found. Since no new rights, obligations or relationships arise, neither party is prejudiced. Finding no legal obstacle to the circuit court's action here, the preliminary writ is quashed.

BENTON, C.J., PRICE, LIMBAUGH, ROBERTSON, COVINGTON and HOLSTEIN, JJ., and MONTGOMERY, Special Judge, concur.

WHITE, J., not sitting.