Kenneth L. KUBLEY, Appellant/Cross–Respondent,

v.

Molly M. BROOKS, Respondent/Cross–Appellant,

and

Director of the Division of Child Support Enforcement, Department of Social Services, Cross–Appellant.

No. SC 85460.

Supreme Court of Missouri, En Banc.

June 8, 2004.

Rehearing Denied Aug. 3, 2004.

Stephen W. Daniels, Rolla, for Appellant/Cross-Respondent.

Jeremiah W. (Jay) Nixon, Atty. Gen., Bart A. Matanic, Asst. Atty. Gen., Jefferson City, for Cross-Appellant.

Charles T. Rouse, Salem, for Respondent/Cross-Appellant.

LAURA DENVIR STITH, Judge.

Kenneth Kubley and the Division of Child Support Enforcement (DCSE) appeal the trial court's judgment directing them to reimburse Molly Brooks for $21,649 in child support. She was required to pay that amount to DCSE from 1994 to 1998 to reimburse it for sums it had paid to Mr. Kubley in Aid to Families with Dependent Children (AFDC) benefits. DCSE argues that it was entitled to collect these child support amounts pursuant to

an administrative order because at the time it took administrative action there was no prior, existing court order under which Ms. Brooks' child support obligation was set or determinable. It also argues the doctrine of sovereign immunity protected it from liability on Ms. Brooks' money had and received claims and tort claims.

This Court holds that DCSE was without authority to issue an order directing Ms. Brooks to pay child support because her child support obligation was already "determinable" under her dissolution decree in that the decree directed that she pay no dollars in child support. This Court also holds that the doctrine of sovereign immunity in tort has no application to Ms. Brooks' claim for money had and received, which sounds in contract. While the sovereign is immune from suit without its consent even for contract claims, here section 454.400.2(1)[1] provides such consent, stating that DCSE can sue and be sued. Although this language is insufficient to waive sovereign immunity in tort, it is well-settled that it is sufficient to constitute consent to suit in contract.

This Court does affirm the holding that the doctrine of sovereign immunity in tort precludes DCSE from being held liable to Ms. Brooks in tort for wrongfully collecting the improperly collected child support. This Court also affirms dismissal of Ms. Brooks' claims against Mr. Kubley for actual and punitive damages in tort. Finally, because DCSE's payments to Mr. Kubley did not result from a passthrough of Ms. Brooks' child support payments, but rather resulted from his successful application for AFDC benefits, this Court reverses that aspect of the judgment below holding that he is jointly and severally liable for the damages awarded to Ms. Brooks. The

1. All statutory references are to RSMo 1994 unless otherwise indicated.

judgment is reversed in part and affirmed, as modified, in part.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On March 25, 1994, a decree dissolving the marriage of Molly Brooks and Kenneth Kubley was entered. The court awarded the parties joint legal custody of their children. The court nominally awarded Mr. Kubley primary physical custody, but the visitation ordered gave Ms. Brooks custody of the children fifty percent of the time. Because child support was an issue, the court also completed a Form 14. It showed that each parent had equal income and that each owed the other $258.50 in child support per month. Not finding it appropriate that each pay the other the identical amount indicated on Form 14, the court found the Form 14 amount to be unjust and inappropriate, rejected it, and ordered that "both parties be required to support the minor children."

Unbeknownst to either Ms. Brooks or to the court, just a week later, on April 1, 1994, Mr. Kubley applied for AFDC benefits. The next week, on April 8, 1994, he sought an amendment to the decree to provide that primary legal custody was also in Mr. Kubley and to nominally give Ms. Brooks less visitation. Because Mr. Kubley stated that this modification was necessary for him to qualify for various educational grants, Ms. Brooks did not oppose the motion, and the court granted it on April 14. The court made no change in the language of the order addressing child support as Mr. Kubley promised that Ms. Brooks' actual visitation time would remain unchanged. Very shortly thereafter, Mr. Kubley assigned his child support collection rights as the custodial parent to DCSE in return for his AFDC benefits, see sec. 208.040.2(2). Beginning about three months after modification, Mr. Kub-

ley started to limit Ms. Brooks' visitation time, citing concerns over their eldest son's schooling.

As discussed *infra,* DCSE's authority to administratively order a parent to provide child support depends on whether a court order is already in place providing for a set or determinable amount of support. On August 23, 1994, DCSE determined that no such order was in place and that it was authorized, therefore, to enter an administrative order setting an amount of support to be paid by Ms. Brooks. After serving Ms. Brooks with a notice and finding of financial responsibility, DCSE issued an administrative default order on September 29, 1994, ordering her to pay $381 per month in child support and to enroll her children in a group insurance plan, if available.

One year later, the Phelps County assistant prosecutor filed a motion for contempt against Ms. Brooks for nonpayment of support. Ms. Brooks was unable to pay this amount because she entered a year-long registered nurse program in August 1994. A court date was set before a different judge than had heard the dissolution. Ms. Brooks was never served with notice of the hearing and failed to appear. A warrant was issued, and she was incarcerated for five days until the warrant was withdrawn and she agreed to pay the administratively-required child support to avoid further incarceration.

Mr. Kubley filed a motion to modify in the circuit court on November 27, 1996, to which Ms. Brooks filed cross-motions. While these motions were pending, DCSE issued another administrative default order raising Ms. Brooks' child support obligation to $598 per month. On September 29, 1998, pursuant to a stipulation, the *circuit court* then entered an order modifying both custody and support, ordering Ms. Brooks' to pay child support of $500

per month. Despite this new *court* order, DCSE filed an administrative notice of intent to increase Ms. Brooks' monthly child support payments to $732 in February 2000. Once Ms. Brooks sought administrative review of this proposal, DCSE refigured her proposed support obligation as $543 per month, but failed to seek or obtain court approval of this administratively modified support order. Ms. Brooks then filed the instant motion for injunctive relief to prevent DCSE from increasing her obligation beyond that ordered by the court and sought reimbursement from DCSE and Mr. Kubley of the $21,649 in child support payments she had paid DCSE between September 29, 1994, and the court's September 1, 1998, modification order. She also sought actual and punitive damages from DCSE and Mr. Kubley and primary custody of her children.

The circuit court found DCSE and Mr. Kubley jointly and severally liable to Ms. Brooks for the full $21,649, awarded her primary physical custody, and directed Mr. Kubley to pay Ms. Brooks monthly child support.[2] DCSE and Mr. Kubley appeal the restitution order. After opinion by the Missouri Court of Appeals, Southern District, this Court granted transfer. *Mo. Const. art. V, sec. 10.*

## II. ANALYSIS

### A. Standard of Review

■ The circuit court's judgment will be affirmed unless no substantial evidence exists to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

### B. The Circuit Court's Child Support Order Was for a "Determinable" Amount Under Section 454.460(2).

Section 454.470.1 provides:

*If a court order has not been previously entered,* the director may issue a notice and finding of financial responsibility to a parent who owes a state debt or who is responsible for the support of a child on whose behalf the custodian of that child is receiving support enforcement services from the division under section 454.425.

*Sec.* 454.470.1 (emphasis added). If, however, a "court order" has been previously issued, then section 454.496 requires DCSE to move to modify that order in the trial court that entered it in order to change the court-ordered support. *Sec.* 454.496.1, 6.

■ The relevant statute defines "court order" as "any judgment, decree, or order of any court which orders payment of a set or determinable amount of support money." *Sec.* 454.460(2). Such an order will be found where the circuit court undertakes to act upon the issue of support money. *Dye v. Div. of Child Support Enforcement,* 811 S.W.2d 355, 360 (Mo. banc 1991).

■ In its original and amended decree in 1994 in this case, the circuit court ordered that "both parties be required to support the minor children." DCSE claims, and the dissenting opinion suggests, that this was not a "court order" as defined in section 454.460(2) because it did not provide for a set *and* determinable amount of child support; therefore, DCSE had jurisdiction to enter a support award under section 454.470.1. Ms. Brooks argues that this was a "court order" as defined in section 454.460(2), noting that only a set *or* determinable amount of support must be ordered and that here the amount of child support was determinable.

---

**2.** The latter two aspects of the order are not contested on appeal.

This Court concludes that the circuit court's 1994 decree did constitute a court order as that term is used in section 454.460(2). While that order did not set out a specific numerical amount of support to be paid by one parent to the other, it is undisputed that the court specifically considered the issue of support, prepared a Form 14, found it showed each party had equal means and would have the child a nearly equal amount of time, specifically found the Form 14 amount, which would have required each parent to pay the other the same amount, to be unjust and inappropriate, and in that context ordered the parents both to support the minor children. Indisputably, this was a court order that *addressed* child support. The parties' disagree whether the amount of support required under this order was "determinable."

DCSE argues that to be determinable, the order must direct that a specific dollar amount of support be paid from one parent to the other. But, the term "determinable" has a broader reach. It means "capable of being determined, definitely ascertained, or decided upon." WEBSTER'S NEW COLLEGIATE DICTIONARY 310 (4th ed.1976). Here, there is no doubt that each parent could determine from the court's order exactly what they were to pay to the other parent—nothing. There is no doubt that DCSE could and did determine from the order entered by the court exactly what Ms. Brooks was required to pay Mr. Kubley for support of their children—nothing. DCSE asks this Court to apply the statute as if it stated that DCSE has authority to issue an administrative order of support if the support order entered by the trial court did not direct that money be exchanged between the parents. But, that is not what the statute requires. It requires only that the trial court act on the issue of support by entering an order from which the amount payable is determinable. Here, it can be determined, and with certainty, to be zero.

In similar circumstances, *Binns v. Missouri Division of Child Support Enforcement*, 1 S.W.3d 544, 547 (Mo.App. E.D. 1999), held that the circuit court's order stating that "neither party is obligated to the other as and for child support" was a court order setting a determinable amount of child support. This holding correctly recognized that the issue is not whether a court has ordered money to change hands between the parents, but whether a court order has previously been entered governing child support. It does not matter that the order, once in place, directs the payment of no dollars in support between the parents rather than hundreds of dollars. It is the fact that a court order that has been entered that provides for a set or determinable amount of support money that is dispositive.[3] This follows from the

---

**3.** *See also, Garcia–Huerta v. Garcia,* 108 S.W.3d 684 (Mo.App. W.D.2003) (order that other parent pay child support but parent against whom DCSE sought support pay nothing was a court order of a set or determinable amount of money); *Shockley v. Div. of Child Support Enforcement,* 980 S.W.2d 173 (Mo.App. E.D.1998) (order to pay $0.00 constituted court order under the statute). The dissenting opinion suggests that since the order does not indicate how much the court below wanted each parent to spend when they were themselves supporting the child, there is no set or determinable child support amount. But, that misses the mark. The test is not whether it can be determined how much a parent is to spend in supporting a child while the child is with them, but whether a "court order" has been entered ordering *"payment* [to the other parent] of a set *or* determinable amount of support money." *Sec.* 454.460(2) (emphasis added). And here, just as in *Binns* and the other cited cases, that amount is easily determinable, and was determined by DCSE and both parents, to be $0.00. The statutory requirements are met.

fact that DCSE is not a reviewing body and cannot overrule a valid court order from a circuit court. Article V, section 18 of Missouri's Constitution provides for judicial review of agency decisions; it does not provide for agency review of court decisions.

Here, while the court did not use the phrase "neither party is obligated to the other as and for child support," implicit in the order that both parties support the children is that each parent pays nothing to the other in child support so that the respective support awards are both $0.00. To rule in this circumstance that no court order had been previously entered determining support would put form over substance and would render superfluous the court's actions in regard to support and the specific rejection of Form 14. It would require a judge to direct a parent to make a nominal payment to the other parent, or a payment of $0.00, if the judge wanted to retain authority over the issue of support, even where, as here, the court had specifically considered the support issue and specifically determined that a parent was not to pay any support.

The law does not require such action. Because there was an existing, effective order governing child support, DCSE had no authority under section 454.470.1 to enter a competing, administratively-based support award.[4] The effect of DCSE's order was to overrule the court's previously entered order providing that neither

was to pay support to the other. DCSE had no authority to enter such an administrative order.[5] If DCSE believed a different support amount was proper, it was required to move for modification under section 454.496.5. That section places the burden on the moving party—DCSE—to show a substantial change of circumstances under section 452.370.1. It is the court, not DCSE, which ultimately determines whether this burden was met. Sec. 454.496.6. DCSE did not even attempt to do so here; its modified order was entered only a month after the court entered its April 14, 1994, decree.

■ For similar reasons, this Court also rejects DCSE's argument that Ms. Brooks is estopped from bringing her claims because she acquiesced in DCSE's order by paying the child support it ordered her to pay. While Ms. Brooks did not immediately appeal DCSE's child support orders, she refused to pay it until she was incarcerated for failure to do so.[6] In *Wampler v. Director of Revenue*, 48 S.W.3d 32 (Mo. banc 2001), this Court held that the director of revenue will not be held to have waived his right to appeal by acquiescing in a judgment when he complies with a court order that he restore a license to a driver. In so holding, this Court noted that "it would be an absurd result not intended by the legislature to require that the director risk being held in contempt of court in order to preserve the right to

---

4. An unsettling effect of DCSE's failure to abide by proper procedures is the confusion and uncertainty illustrated in this case by the fact that, although the court had issued an order and was in the process of modifying it, DCSE issued a competing order directing payment of a different amount, and motions to modify both were pending simultaneously.

5. Although the trial court reached this result on a different ground, we will affirm where it reached the right result, even if for the wrong

reason. *See, e.g., Fix v. Fix*, 847 S.W.2d 762, 766 (Mo. banc 1993); *Edgar v. Fitzpatrick*, 377 S.W.2d 314, 318 (Mo. banc 1964).

6. Perhaps because of the issues Ms. Brooks raises about notice, and the fact that an order entered without subject matter jurisdiction can be collaterally attacked, DCSE relies on estoppel rather than a claim that she waived her right to contest the order by failing to timely file an initial appeal of it.

appeal in cases such as this." *Id.* at 34. Public policy also would not favor either that result or a refusal to return the license pending appeal, with the consequent disruption of the driver's ability to drive. *Id.*

So too, here, Ms. Brooks will not be held to have acquiesced in the child support order when she paid it under threat of further incarceration and contempt, and it would not further public policy to require her to refuse to support her children while her obligation to do so is being litigated.

In any event, the existence of a prior support order deprived DCSE of authority to issue a new support order by administrative action, and its order attempting to do so was void. *State Tax Comm'n v. Admin. Hearing Comm'n,* 641 S.W.2d 69, 72 (Mo. banc 1982) (administrative actions taken without subject matter jurisdiction, such as order purporting to give declaratory judgment, are void); *Garcia–Huerta,* 108 S.W.3d at 687. Except in unusual circumstances, *see, e.g., State ex rel. York v. Daugherty,* 969 S.W.2d 223, 224–25 (Mo. banc 1998) (where parties accept benefits of judgment of dissolution entered by commissioner rather than judge, they will be estopped from attacking it later), subject matter jurisdiction cannot be conferred by estoppel.[7] Here, unlike in *York,* the decree to which estoppel effect is sought to be given by DCSE is not a prior judicial decree, but a void administrative action that DCSE is statutorily prohibited from taking if, as here, a prior court order of

support has been entered. Estoppel is an equitable doctrine, and in circumstances of this case it is not applicable.

*B. DCSE has Consented to Suit for Non–Tort Claims.*

DCSE argues that, even if Ms. Brooks would otherwise have an action against it for money had and received to recover the $21,649 she paid in child support, DCSE is immune from liability under the doctrine of sovereign immunity as codified in section 537.600, in that this is a suit against the State and "neither of the statutory exceptions, for dangerous conditions and motor vehicle accidents, could possibly apply here."

■ DCSE recognizes that Ms. Brooks is not suing in tort, but rather is suing in contract for money had and received and acknowledges that immunity from suit is waived when the State enters into an express contract. *V.S. DiCarlo Construction Co., Inc. v. State,* 485 S.W.2d 52, 54 (Mo. 1972). But, DCSE notes, suits for money had and received are not based on express contract, but rather on equitable principles permitting recovery of money from defendant that, in all justice and fairness, the evidence shows defendant should not keep. *See, e.g., Palo v. Stangler,* 943 S.W.2d 683, 685 (Mo.App. E.D.1997).[8] As such, it argues, the waiver applicable to cases involving express contracts should not apply here. It further cites to cases it says hold that a statutory provision that an agency

7. *See, e.g., United Cemeteries Co. v. Strother,* 342 Mo. 1155, 119 S.W.2d 762, 765 (1938); *In re Buckles,* 331 Mo. 405, 53 S.W.2d 1055, 1057 (1932); *State ex rel. Kelly v. Trimble,* 297 Mo. 104, 247 S.W. 187, 193 (1922) (accord).

8. *Accord, Fulton Nat'l Bank v. Callaway Mem'l Hosp.,* 465 S.W.2d 549, 553 (Mo.1971) (stating that a money had and received claim "[I]s not a suit upon express contract but upon an implied contract created by law");

*Williams v. Ill. Cent. R. Co.,* 360 Mo. 501, 229 S.W.2d 1, 4 (1950) (money had and received claim sounds in contract); *Bisesi v. Farm & Home Sav. & Loan Ass'n of Mo.,* 231 Mo.App. 897, 78 S.W.2d 871, 873 (1935) ("Having money that rightfully belongs to another, creates a debt; and wherever a debt exists without an express promise to pay, the law implies a promise; and the action always sounds in contract").

can "sue and be sued" is not a waiver of sovereign immunity.

DCSE's position reflects a fundamental, but not uncommon, confusion of the doctrine of sovereign immunity from liability in tort with the separate, but related, doctrine that the sovereign cannot be sued without its consent. Section 537.600 deals *solely* with the State's sovereign immunity from liability *in tort*, stating:

> Such *sovereign or governmental tort immunity* as existed at common law in this state prior to September 12, 1977, except to the extent waived, abrogated or modified by statutes in effect prior to that date, shall remain in full force and effect, except that, the immunity of the public entity *from liability* and suit *for compensatory damages* for *negligent acts or omissions* is hereby expressly waived in the following circumstances: . . . .

Sec. 537.600.1 (emphasis added).

As is evident, section 537.600 expressly states it applies *only* to suits in tort. The purpose of section 537.600 was to reinstate sovereign immunity in tort in Missouri as it had existed prior to its abrogation by judicial decision on September 12, 1977, in *Jones v. State Highway Commission*, 557 S.W.2d 225 (Mo. banc 1977).[9] Section 537.600.2 does not address or govern the liability of the State under non-tort theories of recovery.

Abrogation of sovereign immunity in tort had been considered two years prior to *Jones* in a dissenting opinion in *O'Dell v. School District of Independence*, 521 S.W.2d 403, 414–15 (Mo. banc 1975). It discussed in detail why the doctrine that the State, as sovereign, is immune from *tort* liability was a judge-made rule that could be changed and suggesting that there were six rationales for the doctrine and that none had any continuing validity. *Id.* at 414–18 (Finch, J., dissenting).[10]

Two years later, in *Jones*, this Court agreed. *Jones* considered all six rationales for the "continued validity of the doctrine and [found] them illogical and unconvincing and not compelled by constitutional mandate." *Jones*, 557 S.W.2d at 230. Accordingly, it abrogated the State's sovereign immunity from tort in Missouri. *Id.* But, in so holding, *Jones* expressly stated, "Thus far we have been dealing with immunity from tort liability. There remains the matter of immunity from suit, usually stated in terms of the sovereign not being liable to be sued without its

---

**9.** As this Court recently noted in *Bachtel v. Miller County Nursing Home District*, 110 S.W.3d 799 (Mo. banc 2003), the legislature may consent to suit in other circumstances, such as it did in the statute at issue in that case by providing that the Omnibus Nursing Home Act applies to nursing home districts. *Bachtel* dealt solely with how to determine when there has been a waiver of the doctrine of sovereign immunity *in tort*, not with the more fundamental issue of the sovereign's immunity from suit of any kind in the absence of a consent to be sued. The statutes clearly state that nursing home districts can sue and be sued. *Sec.* 198.200.2. The legislature has also provided for a municipality's waiver of sovereign immunity in tort up to the amount of insurance *Sec.* 537.610.1 (waiving sovereign immunity up to $2,000,000 "for all claims arising out of a single occurrence" and $300,000 "for any one person in a single accident or occurrence").

**10.** The six rationales were: (1) at the time the doctrine was first adopted, governmental agencies were not incorporated and it was feared that any judgment would be against the people themselves; (2) that it is better that the individual bear a loss than that its cost be borne by the public; (3) that the king could do no wrong; (4) public officers have no authority to bind the sovereign; (5) public funds are held in trust and cannot be paid for individual wrongs; and (6) to abrogate the doctrine would lead to financial ruin of the government. *Id.*

consent." *Id. Jones* held that it was not abrogating the sovereign's immunity from suit without its consent. But, it explained, such consent could be found in the case before it, involving the state highway commission and a hospital district, because their governing statutes specifically provided that they could "sue and be sued." *Id.* In so ruling, *Jones* noted that, while prior courts had held that the "sued and be sued" language does not mean the entity in question can be sued in tort, *id.*, this would not apply if tort immunity were not at issue, for then there would be "no reason to require an express assumption of tort liability" or:

> to give the words "sue and be sued" any meaning other than the usual and ordinary one conveyed by the language used, which is that the entity in question may sue and be sued, without restriction as to kind of liability sought to be imposed.

*Id.* While section 537.600 reinstated sovereign immunity in tort, it did not negate *Jones'* statement that an enabling statute's provision that the agency can "sue and be sued" is sufficient to constitute a consent to suit other than in tort. Indeed, *Jones'* statements that the "sue and be sued" language constitutes a waiver of immunity from suit, although not of sovereign immunity in tort, simply reiterated settled law.

As long ago as *Bush v. State Highway Comm'n of Mo.*, 329 Mo. 843, 46 S.W.2d 854 (1932), this Court stated that a provision that the highway commission "may sue and be sued" is a waiver of the State's immunity from suit, adding that were that entity "not liable to the discipline of the courts in proper cases it would be like the monster of whom we read in Mrs. Shelley's Frankenstein (1817).... The state of Missouri has not created such a monster." *Id.* at 856. It distinguished suits in contract from suits in tort, quoting with approval New York's rule that the state's exemption "from liability for the torts of its officers and agents does not depend upon its immunity from action without its consent, but rests upon grounds of public policy that no obligation arises therefrom." *Id.* at 857.

More recently, this Court held in 1972 in *DiCarlo*, 485 S.W.2d at 54, that, "when the State enters into a validly authorized contract, it lays aside whatever privilege of sovereign immunity it otherwise possesses and binds itself to performance, just as any private citizen would do by contracting." Similarly, it held that the effect of "general enabling acts, conferring broad authority to those agencies to sue and be sued ... [is to] provide a continuing waiver of sovereign immunity to those agencies." *Id.* at 56.[11]

*Kleban v. Morris*, 363 Mo. 7, 247 S.W.2d 832 (1952), and *Gas Service Co. v. Morris*, 353 S.W.2d 645 (Mo.1962), relied on by DCSE, are not to the contrary. In both cases, plaintiffs sought a refund of taxes illegally collected by the State. The applicable tax statutes contained specific provisions as to how such suits may be brought.

---

11. *See also, Farmers' Elec. Coop., Inc. v. Mo. Dept. of Corrections*, 977 S.W.2d 266, 272 (Mo. banc 1998) ("The mere fact that the State is the actor does not make an act sovereign for the purpose of subordinating contractual rights."); *State ex rel. New Liberty Hosp. Dist. v. Pratt*, 687 S.W.2d 184, 186–87 (Mo. banc 1985) (by use of "sue and be sued" language, legislature intended public entities to be able to be sued by proper claimants, but did not authorize a suit in tort for negligence); *Todd v. Curators of Univ. of Mo.*, 347 Mo. 460, 147 S.W.2d 1063, 1063–64 (1941) (consent to sue distinguished from waiver of sovereign immunity in tort); *Niedermeyer v. Curators of Univ. of Mo.*, 61 Mo.App. 654 (Mo.App. K.C. 1895) (student could bring suit for excess tuition payments against university under theory of money had and received).

In both cases, this Court found that since the statute permitting suit for tax refunds limited the procedures by which such refunds could be sought, the State's consent to suit extended only to suit by the methods the tax statutes provided. *Gas Service,* 353 S.W.2d at 648–49; *Kleban,* 247 S.W.2d at 837. These cases did not purport to address when or under what terms other state agencies, governed by other statutes, could be sued. Moreover, these cases do not stand for the proposition that a money had and received claim cannot be brought against the State. In fact, *DiCarlo* dismissed the applicability of *Kleban* and similar cases because none "involved instances where the General Assembly had authorized the execution of a contract" and whether that amounted to a waiver of immunity from suit and a consent to such suit. *DiCarlo,* 485 S.W.2d at 56.[12]

Far more applicable is *Palo,* 943 S.W.2d at 683, cited by Ms. Brooks. *Palo* specifically held that the provision in section 454.400.2(1) that DCSE has the power to sue and be sued does not waive the agency's sovereign immunity in tort, but does constitute consent to suit in contract for money had and received. *Karpierz v. Easley,* 31 S.W.3d 505 (Mo.App. W.D. 2000), and *Gavan v. Madison Mem'l Hosp.,* 700 S.W.2d 124, 126 (Mo.App. E.D. 1985), are in accord. To the extent that *State ex rel. Missouri State Highway Patrol v. Atwell,* 119 S.W.3d 188 (Mo.App. W.D.2003), holds to the contrary, it is no longer to be followed.

▇ The principle that the State can consent to suit is directly applicable here.

Because Ms. Brooks' claim for money had and received sounds in contract rather than in tort, the doctrine of sovereign immunity in tort and the cases discussing it are simply irrelevant. The State has unambiguously waived its immunity from suit in section 454.400.2(1), which provides: "[T]he division of child support enforcement shall have the power to sue and be sued." *Sec.* 454.400.2(1).[13] Statutory authority to sue and be sued is sufficient consent to suit to waive the doctrine of immunity of the sovereign from suit without its consent. The State made no claim below or in this Court that Ms. Brooks failed to comply with the terms of its consent to suit. Accordingly, her claim for money had and received is not barred by the immunity of the sovereign from suit without its consent.

*B. Mr. Kubley Is Not Jointly and Severally Liable.*

DCSE and Ms. Brooks argue, and the trial court found, that having accepted AFDC benefits, Mr. Kubley can be found jointly and severally liable to Ms. Brooks for the money that DCSE wrongfully collected from her under equitable theories of restitution and unjust enrichment.

Mr. Kubley does not contest that he received $17,458 in AFDC benefits and that it was solely because of those payments that DCSE required Ms. Brooks to pay the improper child support. Nonetheless, he counters, he cannot be held liable for restitution of any of that money because he had no control over DCSE's actions and had no reason to know its orders

---

12. In his dissenting opinion in *O'Dell,* Judge Finch also distinguished *Kleban,* noting it dealt with the separate issue of immunity from suit without the State's consent and recognized that such contract suits presented a separate issue he was not addressing. *O'Dell,* 521 S.W.2d at 422 (Finch, J., dissenting).

13. This case does not raise, and therefore the Court does not address, whether, in the absence of statutory consent, consent may be implied for a quasi-contractual claim as it is implied for an express contract under *DiCarlo,* 485 S.W.2d at 56.

were invalid. In other words, he argues that he could accept the AFDC benefits paid him by DCSE yet not be responsible to Ms. Brooks for any of the sums DCSE wrongfully took from her to reimburse itself for the payments it made to him.

If the amounts that DCSE wrongly collected from her had been passed on to Mr. Kubley, then the trial court's determination to hold Mr. Kubley jointly and severally liable for the amount of child support wrongly collected from Ms. Brooks would have been correct. This is because an action "for money had and received is proper where the defendant received money from the plaintiff under circumstances that in equity and good conscience call for defendant to pay it to plaintiff." *Palo,* 943 S.W.2d at 685. And, as noted in *Petrie v. LeVan,* 799 S.W.2d 632 (Mo.App. W.D.1990):

> A person who confers a benefit upon another because of a mistake is entitled to restitution if the mistake caused the conferring of the benefit. Restatement of Restitution Sec. 9 (1937).... Thus, a person who has received money from another by mistake, money that in equity and good conscience the person ought not to keep, may be compelled to make restitution—even though the mistake was an honest one.

*Id.* at 635.

Here, however, Mr. Kubley did not receive money from Ms. Brooks or because of the payments wrongly collected from her. To the contrary, Mr. Kubley's collection of AFDC benefits depended on whether he met the requirements for their payment under section 208.040 by showing, for instance, that he had a dependent child, that the child had been deprived of parental support for one of the reasons set out in the statute, that he was not receiving supplemental aid to the blind or aid as an unemployable person, and that he was a

Missouri resident. *Sec.* 208.040.1. His entitlement to those benefits did not depend on whether DCSE was able to obtain full or partial reimbursement for those benefits from Ms. Brooks, although it did require that he assign any right to child support from her to DCSE. *Sec.* 208.040.2.

This does not mean that Mr. Kubley has no potential liability in regard to his receipt of AFDC benefits. For example, under section 454.531.1, RSMo 2000, if DCSE determines that it erroneously paid benefits either in good faith or due to fraud or receipt of inaccurate information from the AFDC recipient, it may bring an action against the recipient to recover that money. But, DCSE has not sought reimbursement in this action based on this provision or on other bases, and whether any such claim would apply to Mr. Kubley is not before this Court in this action. The trial court erred in holding Mr. Kubley jointly and severally liable, and that part of its judgment is reversed.

*C. Ms. Brooks May Not Recover Additional Actual or Punitive Damages.*

Ms. Brooks claims that the court erred in failing to award her actual damages against DCSE because a contract exists between the State and its citizens "whereby the State agrees with the parents and children to assure the financial support of the children in a fair and equitable manner and in return saves the State considerable expense for child care." Despite her assertion to the contrary, Ms. Brooks' claim here clearly sounds in tort. She seeks actual damages against DCSE for the injury caused by her incarceration and the loss of time with her children. These are not contract damages. As discussed in detail above, when seeking tort damages against the State, a plaintiff must overcome two hurdles. Under section 454.400.2(1), as noted, DCSE has consent-

ed to suit. But, DCSE retains its sovereign immunity from tort liability. Ms. Brooks' actual damages claim does not fall within one of the express waivers of sovereign immunity under section 537.600. Ms. Brooks' claim for actual damages against DCSE is barred by sovereign immunity.

 Ms. Brooks next alleges that the court erred in rejecting her claim against Mr. Kubley for actual and punitive damages because Mr. Kubley wrongfully obtained the April 14, 1994, modification of their dissolution decree when he promised at the time that the original custodial arrangement would remain unchanged, but later denied her periods of custody and was indirectly responsible for her brief incarceration. But, Mr. Kubley merely applied for AFDC benefits and assigned his right to recover child support to DCSE as required by section 208.040. He did not cause her incarceration nor force DCSE to enter the support order against her. Mr. Kubley cannot be held responsible for the consequential damages created by this conduct. The circuit court, therefore, did not err in failing to award Ms. Brooks actual and punitive damages against Mr. Kubley.

## IV. CONCLUSION

The judgment of the circuit court as to Mr. Kubley's joint and several liability is reversed; the judgment is modified to provide that Mr. Kubley is not liable to Ms. Brooks for the damages awarded to her; and as so modified, and in all other respects, the judgment is affirmed.

WOLFF, BENTON, PRICE and LIMBAUGH, JJ., concur.

WHITE, C.J., dissents in separate opinion filed; TEITELMAN, J., concurs in opinion of WHITE, C.J.

RONNIE L. WHITE, Chief Justice, dissenting.

I respectfully dissent. Respondent voluntarily acquiesced to a valid and lawful DCSE order for child support, and she is estopped from claiming that the order is void.

A "court order" is defined in section 454.460(2) as "any judgment, decree, or order of any court which orders payment of a set or determinable amount of support money." A "child support order" means a support order for a child, including a child who has attained the age of majority under the law of the issuing state.[1] The original and the amended dissolution decree signed by the trial judge both state: "IT IS FURTHER ORDERED by the Court that both parties be required to support the minor children." The companion order, a formatted "Docket Entry," signed and issued along with the original decree, and unchanged when the decree was amended, has a check list and fill-in-the-blank form. Not only did the judge leave the amount of any ordered child support completely blank, but he also left the check box blank that indicates the existence of an order for child support.

Contrary to the principal opinion's construction, the trial court's dissolution decree, as substantiated by its companion order, did not order a child support payment of a "set and determinable amount of support money." The order stating that the parties "are required to support the minor children," in conjunction with a blank form, does not provide any set or determinable amount of support money. Nor is there any indication in this order that would obligate the parties to contribute equally to the support of the children.

1. Section 454.850.2. All statutory references are to RSMo 2000 unless otherwise noted.

The trial court not ordering child support payments is not the same as entering a valid court order requiring that nothing be paid for support, and *the only order in the record* stating that the parties are required to support the children, while alluding to an amount more than zero, does not indicate any set or determinable amount. Simply put, there exists nothing in this case's legal file that could qualify as a "court order" under the definition provided in section 454.460(2).[2]

Finding no valid order for child support in the trial court's dissolution decree ordering payment of a set or determinable amount of support money, DCSE had authority to pursue child support from Respondent through an administrative action under sections 454.470 and 454.475. This Court has previously held that a DCSE order has the full force and effect of a court order because judicial review is available at the time of entry of the order.[3] In this instance, Respondent did not challenge the DCSE's notice and finding of financial responsibility, and consequently, DCSE issued a default order of support.[4] Respondent further voluntarily acquiesced to the order and complied with it for three and half years, and she is estopped from now claiming that the order is void.[5]

DCSE had the authority to administratively enter a child support order against Respondent. Consequently, I would reverse the trial court's judgment against Mr. Kubley and DCSE and find that no restitution is required.

---

2. To adopt the principal opinion's interpretation that this deficient order implicitly means zero child support has been ordered creates considerable uncertainty in the law. Future parties in dissolution actions when confronted with such orders will simply be able to deny support to their children. Because the principal opinion finds this to be a valid court order by implication, the parent with primary custody will also have been cut off from obtaining no-cost relief through DCSE. Consequently, the custodial parent, struggling with supporting the children, will also be faced with the high cost of litigating a modification action and may effectively be economically barred from obtaining relief. The unintended consequences of today's holding could have a devastating impact on children who must already cope with the separation of their parents.

3. *Hilburn v. Staeden,* 91 S.W.3d 607, 609–10 (Mo. banc 2002).

4. A second default order was issued modifying the amount of child support, and again this order was not challenged judicially.

5. *State ex rel. York v. Daugherty,* 969 S.W.2d 223, 225 (Mo. banc 1998); *State, Dept. of Social Services v. Houston,* 989 S.W.2d 950, 952 (Mo. banc 1999).